## THE CITY OF GALVESTON V. T. J. HEARD.

(Case No. 1302.)

1. CONSTRUCTION OF SIDEWALKS IN A CITY — NOTICE.—When neither the charter nor any legislative act requires notice to the abutter or lot owner, in order to make him liable to pay the cost of sidewalk improvements, then it is not essential that he receive notice, either actual or constructive.

2. POWER OF GALVESTON TO CONSTRUCT SIDEWALKS.— The city of Galveston had power to undertake the construction of sidewalks on its general credit, but the lot owners would only be liable for the actual cost, which would only be the cash value of the bonds paid by the city for the work.

3. STATUTE CONSTRUED — SAME.— The city of Galveston adopted, for the construction of sidewalks, a plan which involved the issuing of bonds to an amount in excess of the amount to which the city was limited by its charter in borrowing money for general purposes. *Held*, the limitation of the power to borrow money for general purposes could not affect the right of the city to borrow money for sidewalk improvements.

4. LIABILITY OF LOT OWNER FOR SIDEWALK CONSTRUCTION.— It is no answer to the claim of the city of Galveston against a lot owner for costs of constructing his sidewalk, that the city had not paid the principal, or provided for the interest on its bonds issued to effect the construction, so long as it proposes to receive the bonds and coupons in payment for sidewalk assessments at par.

5. SAME.— The ordinance of the city of Galveston in regard to the construction, etc., of sidewalks, provided that the owner should have the right and privilege of filling, etc., his sidewalk, provided it was done in accordance with the ordinance and specifications, and completed in sixty days after the passage of the ordinance. *Held*, that one whose sidewalk was not constructed by the contractor until long after the expiration of the sixty days, and who had made no effort to construct it himself, could not complain that the city had advertised for bids and let the contract to do the work before the expiration of the sixty days, within which the owner was authorized to do it himself.

6. SAME.— The right of the city of Galveston to contract for the filling, curbing, grading and paving sidewalks, under its ordinance approved May 7, 1874, was not affected by the failure of the city to give personal notice to lot owners of their right to do the work themselves within sixty days. Their right to do the work themselves was declared in a published city ordinance, of which they were required to take notice.

7. CITY ORDINANCE — PUBLICATION.— An advertisement required by city ordinance to be made for a period of fifteen days in all the daily newspapers of the city, was published from the 8th to the 23d, inclusive, except on Sunday, on which day no papers were published in that city, and this was held a compliance with the ordinance, which could not have meant fifteen publications on fifteen consecutive days, when it was known by those who passed the ordinance that there was no paper in which it could be done.

8. SAME.— Though the city of Galveston, by its ordinance of May 7, 1874, required the city engineer to file, in the mayor's office, immediately thereafter, full specifications, showing how the paving of sidewalks, etc., should be done, the spirit and object of the ordinance were satisfied, if the specifications were prepared with due care and filed by the engineer as soon as practicable.

9. SAME.— See opinion for facts under which the owner of a lot, the sidewalk in front of which had been constructed at the expense of the city of Galveston, could not evade liability by showing that the contractors had failed to obtain the written consent of the owner, specifying what character of pavement he preferred.

10. SAME CONTRACT.— The fact that the contractors with the city of Galveston, under its ordinance of May 7, 1874, were to receive a uniform price per square yard for brick pavement, without regard to the street or locality to be improved, did not render their contract invalid.

11. The assessment made by the city of Galveston for sidewalk improvements did not create a personal liability, authorizing a personal

judgment against the lot owner; the intention of the city charter and ordinance on the subject, was to make the cost a charge against the lot, and collectible only by the sale thereof.

12. LIMITATION.— The limitation of four years did not apply to actions on assessments made under city ordinances for sidewalk improvements, prior to enactment of the Revised Statutes.

13. INTEREST.—The assessments made by the city of Galveston to reimburse the city for sidewalk improvements, made by it under ordinance of May 7, 1874, bore interest. It was competent for the city to regulate the interest on the installments, so as to secure full reimbursement.

14. CONSTRUCTION OF SIDEWALKS BY A CITY.— If the credit of a city is such as to cause it a loss in constructing sidewalks within its limits on a credit, the loss does not constitute a part of the legitimate cost of the work.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

*H. K. Mann & R. V. Davidson,* for appellant.

*Ballinger, Jack & Mott,* for appellee.

I. The court erred in giving its judgment for the plaintiff on the law and facts of the case submitted to the court, instead of giving judgment for the defendant. Clegg *v.* State, 42 Tex., 105; Dillon, §§ 45, 643, 648, 649, and references; Cooley on Taxation, 259, 529; Davidson *v.* New Orleans, 96 U. S., 97 (1877); Stuart *v.* Palmer, 74 N. Y., 183 (1878); Cooley on Taxation, 267, and references; Wilkes *v.* Potter, 18 O. S., 85; Myrick *v.* La Crosse, 17 Wis., 442; Nash *v.* St. Paul, 11 Minn., 178; Scammon *v.* Chicago, 40 Ill., 146; Hewes *v.* Reis, 40 Cal., 262–3; Rathbun *v.* Acker, 18 Barb., 394; Dubuque *v.* Wooten, 28 Iowa, 571; Wilson *v.* Poole, 33 Iowa, 447; Lowell *v.* Waulworth, 6 Cush., 221; Thomas Man. Co. *v.* Lathrop, 7 Conn., 550–5; Kansas P. R. *v.* Russell, 8 Kan., 558; Mayor of Balt. *v.* Porter, 18 Md., 284; The Same *v.* Horn, 26 Md., 194.

II. The city had no authority under its charter to construct sidewalks on the credit of its bonds, as provided by

ordinance of August 19, 1873, read by plaintiff, and to assess said cost, in said bonds, against the abutting owners, payable in ten payments, bearing ten per cent. per annum interest; and such assessment can create no liability against defendant or any other abutting owner. Williams v. Davidson, 43 Tex., 1, 34; Allen v. Galveston, 51 Tex., 318; Police Jury v. Britton, 15 Wall., 566; Memphis v. Ray, 19 Wall., 475; Dillon on Mun. Corp., § 393; State v. Rosenstock, 11 Nev., 147; Thomas v. Port Huron, 27 Mich., 323; Starin v. Genoa, 23 N. Y., 439; Gould v. Sterling, id., 456; People v. Mead, 24 N. Y., 124; Horton v. Thompson, 71 N. Y., 513; S. P. affirmed, Scipio v. Wright, 101 U. S., 665; Chamberlain v. Burlington, 19 Iowa, 403; U. P. R. v. Lincoln County, 3 Dil. C. C., 300; Special Act Leg. 1871, p. 255; Gauge v. Clarksville, U. S. C. C., E. D. of Mo., 1879, by Dillon J., 7 Reporter, 519; Hackettstown ads. Schwackhamer, 37 N. J. Law, 191; Knapp v. Hoboken, 38 id., 71; Beaman v. Lake Co., 42 Miss., 237; Hawkins v. Carroll Co., 50 Miss., 762; Carter v. Dubuque, 35 Iowa, 416; Middleport v. Ætna Life Ins. Co., 82 Ill., 562; Lippincott v. Pana, 92 Ill., 24; —————— v. Pontatoc Co., S. C. U. S., October Term, 1880, Central Law J.; City of Bryan v. Page, 51 Tex., 532; Pye v. Peterson, 45 Tex., 314; Article on " The Power of Municipal Corporations to Borrow Money," Southern Law Review, January, 1881, 663–679, and references; Rogers v. Burlington, 3 Wall., 667; Middleton v. Alleghany Co., 37 Penn. St., 241; Reenboth v. Pittsburgh, 41 id., 278; Sybert v. Pittsburgh, 1 Wall., 272.

III. The city could not undertake the construction of sidewalks on its general credit — on the common and general liability of its tax-payers, but could only do so by defraying the present current cost thereof, substantially and in good faith, by obtaining the same from the owners of the abutting lots. The system was in utter disregard and perversion of the charter. Dillon, § 55; Dwarris on

Stat., Potter's ed., 72; Cooley on Taxation, 209; Lucas, Turner & Co. v. San Francisco, 7 Cal., 463; Roeck v. Newark, 33 N. J., 129; New Albany v. Sweeny, 13 Ind., 244; Johnson v. Indianapolis, 16 id., 227; McCullough v. Brooklyn, 23 Wend., 458; Lake v. Williamsburg, 4 Denio, 533; Hunt v. Utica, 18 N. Y., 447; Swift v. Williamsburg, 24 Barb., 432; Baldwin v. Otsego, 1 Abbott's N. Y. Decisions, 62; Ruppert v. Baltimore, 23 Md., 193; Annapolis v. Harwood, 32 id., 480; Fairfield v. Radcliff, 20 Iowa, 396; Craycraft v. Selvage, 10 Bush, 698, 708-9; Reed v. Toledo, 18 Ohio, 161; Goodrich v. Detroit, 12 Mich., 287; Murphy v. Louisville, 9 Bush, 189; also authorities cited under next assignment.

IV. The evidence shows that the city adopted a plan of constructing sidewalks, by the issuance of bonds therefor, to an amount exceeding $150,000, of which the sidewalk of Heard was a part. The charter of the city limited it to borrowing money for all general purposes to $50,000. This was, therefore, in excess of its powers, and cannot be enforced against the owners of property. Dillon on Mun. Corp., §§ 85–89, and cases cited; McPherson v. Foster, 43 Iowa, 48; Coulson v. Portland, Deady, 484; Balt. v. Gill, 31 Md., 375; St. Louis v. Weber, 44 Mo., 547; Corejon v. Gage, S. C. of Mo., 1879, 9 Cent. L. J., 238; Buchanan v. Litchfield, S. C. U. S., Oct. Term, 1880, Cent. L. J.; "Power of Municipal Corporations to Borrow Money," article by Judge Dillon, Southern Law Review, January, 1881, p. 633; Rogers v. Burlington, 3 Wall., 663; Dillon on Mun. Corp., § 538; First Charter of Galveston, Acts 1840, p. 272; Charter, August 27, 1856, Special Laws 1856, p. 142; Charter, December 9, 1863, Acts 1863, p. 7; Rodman v. Munson, 13 Barb., 63; Newell v. People, 3 Seld., 9; Middleton v. Alleghany Co., 37 Penn. St., 237; Sybert v. Pittsburgh, 1 Wall., 272.

V. The first section of the paving ordinance provided that the owners of property fronting or abutting on the

sidewalks should have the right and privilege of filling up, etc., their respective sidewalks; provided it was done in accordance with the ordinance and specifications, and completed in sixty days after passage of the ordinance. Section three authorized them to advertise for a period of fifteen days, in all the daily newspapers published in the city, for bids or proposals to do said work. Bids to be submitted to the city council for acceptance or rejection. Until the opportunity was given to the lot owners to do the work, and the time expired therefor, the right to advertise and make contracts by the city had not arisen. All the contracts, however, were made within the sixty days. Cowen v. West Troy, 43 Barb., 48; Nicholson Pavement Co. v. Painter, 35 Cal., 707; Same v. Fay, id., 695. See 3 Woods, 299–300, Hitchcock case.

VI. Section 1, ordinance May 7, 1874, provided that the owners of property fronting or abutting on the sidewalks shall have the right and privilege of filling up, grading, curbing and paving their respective sidewalks; provided the said work is done in accordance with the provisions of the ordinance and the specifications of the city engineer on file in the mayor's office; and provided further, that they finish and complete the said work within sixty days from and after the passage of this ordinance. The proper construction of this ordinance requires that personal notice should have been given to said owners, and, without this, the right of the city to make contracts did not arise. Brewster v. Newark, 4 Stock. (N. J.) Eq., 114.

VII. The period of fifteen days' advertisement was required to be such that the specifications were on file in the mayor's office, and subject to inspection of bidders; and the evidence is positive that this was not the case. Kneeland v. Milwaukee, 18 Wis., 411; Mills v. Burnham, 20 Wis., 112; Brady v. New York, 20 N. Y., 312; Nash v. St. Paul, 11 Minn., 178; Bigler v. New York, 5 Abb. (N. Y.) New Cases, 51; 10 U. S. Dig., 1879, p. 537, No. 5.

VIII. The contract, entered into between the city and Lucas & Bumphrey, provided as follows: "It is further understood and stipulated, that, before the said L. & B. can lay down any portion of the said pavement, they must obtain the written consent of the owners of property situated on the sidewalk, specifying which of the said pavements they prefer, which written consent of the said property owners shall be filed in the mayor's office." No such written consent was given. It was a condition precedent to their right to do the work, or to the city to hold the defendant liable therefor. Clause in Charter authorizing construction of sidewalks, title IV, art. 3, § 8; Acts 1871, p. 355, and Ordinance May 7, 1874, copied under fifth assignment; Story's Agency, § 165; Dillon on Mun. Corp., § 639; Reilly v. Philadelphia, 60 Penn. St., 467; Pittsburgh v. Walter, 69 id., 365; Leavenworth v. Rankin, 2 Kan., 357; Swift v. Williamsburg, 24 Barb., 427; People v. Rochester, 21 Barb., 656; Litchfield v. Vernon, 41 N. Y., 123; Goodrich v. Detroit, 12 Mich., 279; Johnson v. Common Council, 16 Ind., 227; New Albany v. Sweeny, 13 Ind., 245; Kyle v. Marlin, 8 Ind., 34; Delphi v. Evans, 36 Ind., 90; Henderson v. Balt., 8 Md., 352; Holland v. Balt., 11 Md., 186; Bouldin v. Balt., 15 Md., 18; Balt. v. Eschback, 18 Md., 276; Carron v. Martin, 2 Dutch. (N. J.), 594; Camden v. Mulford, id., 49; State v. Elizabeth, 1 Vroom (N. J.), 176; State v. Hand, 2 id., 574; State v. Orange, 32 N. J., 49; Wells v. Burnham, 20 Wis., 112; Louisville v. Hyatt, 2 B. Mon., 127; Covington v. Casey, 3 Bush (Ky.), 698; Lexington v. Headly, 5 id., 508; Burnett v. Sacramento, 12 Cal., 76; McGuinn v. Peri, 16 La. An., 326; Street Case, id., 393; McKee v. Brown, 23 id., 306; St. Louis v. Clemens, 36 Mo., 467; Matter of Market Street, 49 Cal., 546; Galveston v. Galveston C. R. Co., 46 Tex., 435; Daughty v. Hope, 3 Dennis, 599; Bronson C. T.; Simpler's Case, 19 Abb. Pr. 145.

GOULD, ASSOCIATE JUSTICE.—The city of Galveston

brought this suit to recover of T. J. Heard an alleged assessment for a sidewalk alleged to have been completed by the city in front of his lot No. 1, in block 203, in said city, December 31, 1874, claiming both a lien on the lot and a personal judgment. The assessment was made March 1, 1875, amounted to $169.43, and was claimed to be due in ten annual installments, commencing December 31, 1874, and bearing interest at ten per cent. per annum, and the suit was to recover or enforce those installments due at the institution of the suit, November 6, 1879. The pleadings of defendant were sufficient to present the questions ruled upon by the court below, trying the case without a jury, which rulings or conclusions, both of law and fact, and the reasons therefor, constitute part of the record, and have greatly aided this court in examining and disposing of the case.

Limitation was sustained against the installment due more than four years before suit was brought; no interest was allowed; and judgment was rendered for eighty per cent. of the other installments due, the court finding the value of the bonds in which the work was paid for, and the assessment made at the time, to be eighty per cent.

Both parties appeal and assign error — the city bringing up the record.

We propose to consider first the rulings of the court on various propositions presented to the court by counsel for defendant, embracing the principal questions in the case.

" First proposition:

"The ordinance, proved and relied on by plaintiff, provided for assessments for sidewalk improvements, without notice of any kind to property owners of the front or abutting lots, or the opportunity to be heard in regard to said assessments — wholly *ex parte* — and such assessments have no validity, and cannot be enforced.

" STATEMENT.— The city charter authorizes the city council 'to establish, erect, construct, regulate and keep

in repair culverts and sewers, sidewalks and crossways, and to regulate the construction and use of the same, and to abate and punish any obstruction thereon; and the cost of the construction of sidewalks shall be defrayed by the owners of the lot or part of lot or block fronting on the sidewalk, and the cost of any sidewalk constructed by the city shall be collected, if necessary, by the sale of the lot or part of lot or block on which it fronts, together with the cost of collection, in such a manner as the city council may, by ordinance, provide; and a sale of any lot or part of lot or block to enforce collection of cost of sidewalk shall convey a good title to the purchaser, and the balance of the proceeds of sale, after paying the amount due the city and cost of sale, shall be paid by the city to the owner.' Charter 1871, title IV, art. 3, § 8; Special Laws, 1st Sess., 1871, 355-6.

"The ordinance under which the assessment was made is the 4th section, 'Ordinance to provide for the filling up, grading, curbing and paving of certain sidewalks,' approved February 3, 1874, as follows:

"§ 4. That the cost of filling, raising, curbing and paving each separate sidewalk as soon as the same shall be finished and completed, shall be a charge against the property fronting and abutting thereon; and shall be assessed against the same in the following manner, to wit: As soon as each sidewalk in each separate block is finished and completed, the city engineer shall make out in a book regularly prepared for the purpose, a full list of all lots or fractional lots fronting or abutting on the same, giving the number of each and the frontage of each on the sidewalk, the number of the block in which situated, and the names of the owners thereof, if known, and if not known, then the said lots or fractional lots shall be entered upon the said book as unknown. The said officer shall then enter or place in the said book, opposite each lot or fractional lot, its proper or *pro rata* portion of the cost of the

filling, raising, curbing and paving, and shall exhibit his said list, so made out and signed by him, to the city council at its next regular meeting after the said list is made out and finished, and upon the approval and acceptance of the same by the city council, the amount placed on the said list opposite each lot or fractional lot, shall be an assessment against the same, and each assessment so made shall date back to the time or date upon which the improvement of its respective sidewalk was finished and completed, and the same shall be, until paid, a lien upon the property against which it is levied. After the approval and acceptance of the said list by the city council, it shall be signed by the mayor and countersigned by the city clerk, and placed in the hands of the city collector for collection; provided, however, that the city engineer shall not charge for making surveys of sidewalks under this ordinance."

From the opinion of the district court on this proposition we extract and adopt the following:

"Where neither the charter nor any legislative act requires notice to the abutter or lot owner in order to make him liable to pay the cost of sidewalk improvements, then it is not essential that notice be given, either actual or constructive." Dil., § 642; 10 O. S., 405.

"It was not made a prerequisite by the charter to the passage of an ordinance for paving, that it should be on a petition of the citizens or abutting owners, or that the citizens or abutting owners should be either actually or constructively notified of the intention of the city council to pass an ordinance for the construction of sidewalks to be charged to abutting owners. The city had the authority to pass an ordinance for the construction of sidewalks, to be a charge upon the abutting owners, without any published notice inviting bids for the work, but giving authority to the mayor or other city officials to enter into private contracts for the work, if the contract was fair and reason-

able and untainted by fraud or unnecessary oppression. In the case at bar, however, the sidewalk ordinance required notice to be published in the daily papers of the city, inviting bids of contractors for the sidewalks, and notice was published in all three of the daily city newspapers, inviting sealed proposals for the work. The passage of the sidewalk ordinance was *per se* notice to all the citizens, the law presuming that all the citizens of the municipality know her laws. After the work was done the assessment was simply a matter of measurement to ascertain the cost, and report of the same to the council under the prescribed form, which did not require any other notice to the abutter, than such as every lot owner is supposed to take of what is being done upon his sidewalk. And the proof is that defendant, before the laying down of the pavement, was called on to make his selection of what kind of pavement he desired to have laid. The charter prohibited any sale of land for taxes except by decree of the district court, and upon the bringing of this suit the defendant was served with notice, and afforded an opportunity of showing the invalidity of the assessment or any defense he might have in law or equity. Neither the charter nor the ordinance having required any notice to the abutter prior to the assessment, and the nature or character of the work to be done, and the assessment not being such as to require prior notice of the assessment, it is not perceived that any principle of law, or public policy in the nature of law, has been violated in the charter or ordinance providing for the construction of city sidewalks, and the assessment of the cost upon the abutting lots strictly upon the frontage."

Where drains for draining swamp lands and the like are to be constructed, and the lands, whether abutting thereon or not, are to be assessed for the cost of the work in proportion to the benefits received by such drain, it is probable that public policy, having the force of law, might

require, before making the unequal assessments, that the owners of the lands receiving different degrees of benefits to be estimated, should receive notice of the time and place and tribunal at and before which the different parties supposed to have been in some degree benefited might appear and introduce their evidence of the degree or extent of benefits received prior to an assessment, or to have an adjustment before some proper tribunal; but, however that may be, it is not necessary to decide, as that differs materially from sidewalk improvements where the abutting owners are liable for cost of the sidewalk fronting the lots, as the law in the latter class of cases, under a charter such as that of 1871, authorizes sidewalk improvements and assessments therefor, without any other notice to abutting owners than such as defendant in this case has had.

Second proposition of appellee submitted to the court below and assigned as error:

"The court had no authority under its charter to construct sidewalks on the credit of her bonds provided by ordinance August 19, 1873 (read by plaintiff), and to assess said cost in bonds against the abutting owners, payable in ten payments, bearing ten per cent. interest; and such assessment can create no liability against defendant or other abutting owner."

In this court the appellee also files the following:

"Minor proposition: The city could not undertake the construction of sidewalks on its general credit — on the common and general liability of its tax-payers, but could only do so by defraying the present current cost thereof, substantially and in good faith, by obtaining the same from the owners of the abutting lots. The system was in utter disregard and perversion of the charter."

In the case of the city of Galveston v. Loonie, just disposed of, we have held that the city had power to undertake the construction of sidewalks on its general credit,

and without deciding that it might construct them by means of negotiable bonds, or that the bonds and coupons, though in form negotiable, were in law anything more than non-negotiable evidences of debt, we held the city liable to pay principal and interest of her indebtedness for such construction evidenced by such bonds. We do not think the assessment invalid because of the contract to pay in bonds. The court below rightly held that the lot owner would only be liable for the actual cost, which would be "the cash value of the paper so paid for the work." The value of the bonds at the time the sidewalk was made, the court finds to have been eighty cents on the dollar, and the assessment made is reduced accordingly.

The court says: "The contract for the sidewalk is a matter between the city and the contractor, and the only interest that the abutter has in the contract is, that it be not tainted with fraud, and that his agent, the city, shall have the contract substantially performed."

Again it says: "The city had, under her charter, the power to contract for the construction of sidewalks, stipulating with the contractor to pay him in the future, without any other evidence of the debt than that furnished by the written contract itself, and to assess the cost of the work against the abutting lots, or the city might have agreed with the contractor that she would assess the cost of construction against the abutting lots, and collect the same as they became due and pay over the same to the contractor in payment for his work. The mere fact that the work was to be paid for in illegal bonds, if they be illegal, cannot defeat the assessments otherwise legal. 1 Dillon, sec. 402; 2 Dillon, secs. 596, 597, 648."

The same principle is thus stated by the supreme court of Pennsylvania: "As lot owners, they are liable, under the statute, for the cost and expenses of grading and paving, no matter how it was done, whether by contract

or not, and no matter who may have been the immediate agents in doing the work. They have no interest in anything beyond the amount of the expenses." Schenley *v.* Commonwealth, etc., 36 Penn. St., 61.

The third proposition submitted by defendant was:

"The evidence shows that the city adopted a plan of constructing sidewalks, by the issuance of bonds therefor, to an amount exceeding $150,000, of which the sidewalk of Heard was a part. The charter of the city limited it to borrowing money, for all general purposes, to $50,000. This was, therefore, in excess of its powers, and cannot be enforced against the owners of property."

The court held this limitation of its power, to borrow for general purposes, not to affect the city's power to create a debt for sidewalk improvement, and in the case of the City *v.* Loonie, we have ruled to the same effect.

Fourth proposition of appellee submitted to the court below, the overruling of which is assigned as error:

"The allegations are that the city constructed plaintiffs' sidewalk, contracting for paving, and paying for the same in an issue of sidewalk improvement bonds amounting to $250,000. Said bonds are invalid. They are not paid by the city, but are repudiated as its legal obligations. No interest is paid thereon. In this state of facts the city has no legal or equitable demand or action against defendant for the construction of his sidewalk."

In its findings of law and fact, the court said:

"There was no proof that the city had at any time repudiated the bonds, although the interest on them has never been paid or provided for, and the proof is that the city offers to receive the bonds and coupons in payment for the sidewalk assessment at par."

This is a sufficient answer to the proposition, especially as we have held the city bound for the principal and interest of the bonds:

Appellee's fifth proposition submitted to the court below, the overruling of which is assigned as error:

"The first section of the paving ordinance provided that the owner of the property, fronting or abutting on the sidewalks, should have the right and privilege of filling, etc., their respective sidewalks, provided it was done in accordance with the ordinance and specifications, and completed in sixty days after the passage of the ordinance. Section three authorized them to advertise for a period of fifteen days in all the daily newspapers to do said work. Bids to be submitted to the city council for acceptance or rejection. Until the opportunities given to the lot owners to do the work and time expired therefor, the right to advertise and make contracts by the city had not arrived; all of the contracts, however, were made within the sixty days."

In the findings of law and fact, the court said:

"Notice was published in all the city daily newspapers, informing lot owners that they had the privilege of making their sidewalks within sixty days. The contractors made their bids within sixty days and the council accepted the bids within sixty days; and the contracts between the city and contractors were executed within the sixty days, but the ordinance was made a part of the contract, and the contract stipulated for the privilege of the lot owners to construct their sidewalks within the sixty days; and notice was also published in all the daily city papers that the lot owners had sixty days within which they had the right to construct their own sidewalks, and the contract could not be distorted by any manner of construction, so as to deprive the lot owners of their privilege of constructing their own sidewalks within the sixty days; and it may well be conceded that had this privilege been violated, the lot owner would have had just ground of defense. But it is not perceived how the

making of the contract between the city and the contractor, before the expiration of the sixty days, which contract recognized the right of the lot owner to build his own sidewalk within sixty days, would render such contract void, especially where the proof shows, as in the case at bar, that neither the contractor, nor the city, nor any other person, interfered with defendant's right to construct his sidewalk within the sixty days. On the contrary, the proof shows that the defendant's sidewalk was not laid by the contractor until more than five months had elapsed after the expiration of the sixty days."

We fully agree with the court in its conclusion that this objection was not well taken.

The ordinance under which sidewalks were constructed is given in full, as follows:

"AN ORDINANCE to amend sections one, two and three of an ordinance entitled 'An ordinance to provide for the filling up, grading, curbing and paving of certain sidewalks,' approved February 3, 1874.

"SECTION 1. *Be it enacted by the city council of the city of Galveston:* That sections one, two and three of an ordinance entitled 'An ordinance to provide for the filling up, grading, curbing and paving of certain sidewalks,' approved February 3, 1874, be and the same are hereby amended so as to read as follows, to wit:

"SEC. 1. That the sidewalks on both sides of the hereinafter-to-be-named streets shall be filled up, graded, curbed and paved in the following manner; that is to say: said sidewalks shall be filled up, or raised, to the grade established by the city engineer, and curbed with red heart cypress wood, stone or brick, and a pavement, six feet in width, laid in the center of the same; the said pavement to be composed of either asphalt, hard brick laid in morter and grouted, concrete made of Portland cement or other proper materials, tiles or stone; that the

owners of property fronting or abutting on the sidewalks hereinafter named shall have the right and privilege of filling up, grading, curbing and paving their respective sidewalks; provided the said work is done in accordance with the provisions of this ordinance and the specifications of the city engineer on file in the mayor's office; and provided further, that they finish and complete the said work within sixty days from and after the passage of this ordinance.

"SEC. 2. That the sidewalks so to be improved shall be those on both sides of avenues F, G, H, I and J, from Eighteenth street to Twenty-fifth street; and on both sides of Eighteenth, Nineteenth, Twentieth, Twenty-first, Twenty-second, Twenty-third, Twenty-fourth and Twenty-fifth streets each, between avenues F and J.

"SEC. 3. That the mayor and the committee on streets and alleys be and the same are hereby authorized and directed to advertise for a period of fifteen days, in all the daily newspapers published in the city of Galveston, for bids or proposals to fill up, grade, curb and pave the sidewalks herein designated. The said bids or proposals, when received, shall be submitted to the city council for acceptance or rejection. The city engineer, immediately upon the passage of this ordinance, shall file in the mayor's office, with the city clerk, full specifications as to how the details of the said work are to be executed and completed; and the said bids and proposals are to be made in accordance with the provisions of this ordinance and the said specifications, and for the bonds of the city of Galveston at par. Any and all contracts made and entered into under and by virtue of this ordinance, shall require the said work to be commenced within sixty days from and after the signing of the same, and to be finished and completed within six months thereafter; and it shall be further stipulated in the said contracts that ten per centum of the amount due for the execution of the said

work shall be retained by the city until the completion, in good faith, of the same, and its acceptance by the city; then, in that event, it shall be paid over to the contractor doing the work.

"SEC. 4. That this ordinance go into effect and be · in force, from and after its passage.

"C. W. HURLEY, Mayor.

"Approved May 7, 1874."

Copy of notice to contractors, set out in full, as follows:

"NOTICE TO CONTRACTORS.

"MAYOR'S OFFICE,

"GALVESTON, TEXAS, May 7, 1874.

"Sealed proposals will be received at this office until Saturday, May 23, 1874, at 12 o'clock M., to fill up, grade, pave and curb the sidewalks on the following streets and avenues, where the same have not been filled and paved by the property owners: Avenues F, G, H, I and J, both sides, from Eighteenth street to Twenty-fifth street. On both sides Eighteenth, Nineteenth, Twentieth, Twenty-first, Twenty-second, Twenty-third, Twenty-fourth and Twenty-fifth streets, between avenues F and G. Said sidewalks shall be filled up or raised to the grade established by the city engineer, and curbed with red heart cypress wood, stone or brick, and a pavement six feet in width laid in the center of the same; the said pavement to be composed of either asphalt, hard brick laid in mortar and grouted, concrete made of Portland cement or other proper materials, tiles or stone.

"Proposals will be received for the whole work or any portion thereof, payment to be made in the bonds of the city at par.

"All work to be done according to the specifications of the city engineer, on file in the clerk's office.

"The city reserves the right to reject any and all bids.

" Envelopes to be indorsed, 'Proposals for Improving Sidewalks.'                      C. W. HURLEY, Mayor.
" May 8, d–15t."

A notice to citizens was published in the city news-papers as follows:

"MAYOR'S OFFICE,
"GALVESTON, TEXAS, May 7, 1874.

" The attention of the owners of property fronting or abutting on the sidewalks on both sides of avenues F, G, H, I and J, from Eighteenth street to Twenty-fifth street, and on both sides of Eighteenth, Nineteenth, Twentieth, Twenty-first, Twenty-second, Twenty-third, Twenty-fourth and Twenty-fifth streets, each between avenues F and J, is hereby called to the provisions of ordinance (No. 7) approved May 7, 1874, providing for filling, curbing, grading and paving said sidewalks.   All property owners desiring to avail themselves of the privilege of doing their own work, within sixty days from the date of the passage of said ordinance, can obtain full specifications as to how the details of said work are to be executed and completed, from the city clerk, in the mayor's office.

"C. W. HURLEY, Mayor."

In the sixth proposition, it was claimed that by the ordinances the lot owners were entitled to personal notice, and without this the right of the city to make contracts did not arise.   We agree with the court that this ordi-nance does not require personal notice, and that by reason of the notice which they were required to take of the city ordinances, and of the advertisements above set forth, the lot owners had all the notice they were entitled to, of their privilege to construct the sidewalks them-selves.   We further agree with the court in holding that the assessment was not affected by the fact that the advertisement for contractors was made in the name of the mayor alone, and not of the mayor and committee on streets and alleys.   See Hitchcock v. Galveston, 3 Woods,

288.   In this court, counsel claim that the advertisement does not include defendant's lot; but it does not appear that this objection to the advertisement was passed upon by the court below, or called to its attention.   The mistake in the advertisement in substituting in one place avenue G for avenue J, would seem to be clerical, and could scarcely have misled anyone.

The defendant's eighth proposition was as follows:

"The advertisement was required to be made for a period of fifteen days, in all the daily newspapers published in the city of Galveston, for bids or proposals, etc. It was made, commencing on the eighth, for bids to be handed in the twenty-third, by 12 M.   It was made in the papers each day, including Sundays, and omitting two days of non-publication, including the twenty-third.   No paper published but fourteen days; excluding Sundays, it was only published twelve days.   This was not the publication required by the ordinance, and could confer no authority to contract."

Notwithstanding the fact that each of the daily city papers had no issue on one day of the week, the court holds, that the ordinance being presumed to have been passed in view of that fact, did not require "fifteen publications on fifteen consecutive days," and that the notice given was a sufficient compliance with the ordinance. The court also seems to have been of opinion that in this case notice was not a prerequisite to the power of the council to contract.   In our opinion the assessment was not vitiated by reason of any failure to give notice as contemplated by the ordinance.   The required notice was given.   But if it had been defective, the city having proceeded to have the sidewalk constructed, the lot owners' liability for the proper cost of construction was not affected by irregularities in making the contract.

Appellee's ninth proposition submitted to the court below, the overruling of which is assigned as error:

"The period of fifteen days' advertisement was required to be such, that the specifications were on file in the mayor's office and subject to inspection of bidders, and the evidence is positive that this was not the case."

In the findings of law and fact the court said:

"The facts are, that the amended paving ordinance was approved by the mayor on the 7th day of May, 1874. The published notice for sealed proposals was quite specific, but referred bidders to specifications represented to be on file in the mayor's office. There were printed specifications bearing date May 11, 1874, which were proven to have been in the mayor's office as early as May 11, 1874, which were also circulated through the city on that day extensively. At what time the written specifications from which the printed ones were taken were placed in the mayor's office, does not appear from the evidence, but as the published notice for bids was in the daily newspapers on the 8th of May, and referred to specifications then alleged to be in the office, in the absence of any proof that the specifications were not in the office on the 8th of May, it is fair to presume that the specifications were then in the office."

The court further held, that even if the specifications were not on file the full period of fifteen days, it would not invalidate the contract or assessment. See Hitchcock v. Galveston, 3 Woods, 288. The ordinance directs the city engineer, "immediately on the passage" thereof, to file full specifications, etc. The spirit and object of this provision are satisfied if the specifications be prepared with due care and filed by the engineer as soon as practicable. Bidders and citizens desiring to inform themselves of the details of the work, were to be enabled to do so at the mayor's office. If a citizen wished to have the work done himself, he was entitled to know how the work was required to be done. But if the specifications were to be found in the proper office within a reasonable time, and

he had his sixty days thereafter to have the work done, it would be most unreasonable to entertain his objection that they were not filed "immediately," or fifteen days before the contract was let. Even in construing the charter which authorizes an assessment, the strictness with which that authority must be pursued is not such as to require it to be "literally followed." Cooley on Taxation, p. 464. It would seem reasonable that some liberality should be exercised in inquiring whether the city council has proceeded in accordance with its own ordinances — at least in matters other than those of substantial importance.

There are authorities which require all conditions precedent, "whether prescribed by charter or ordinance," to be complied with. 2 Dillon, sec. 649; Starr *v.* City of Burlington, 45 Iowa, 87; City of Lowell *v.* Wheelock, 11 Cush., 391; Washington *v.* Mayor of Nashville, 1 Swan, 177. These cases go further in requiring the city to conform to its own ordinances than any others we have examined, yet in all of them the departure from the ordinance was manifest, and in what might be regarded as a "substantial requirement" in the nature of a condition precedent.

In the last cited case the ordinance required thirty days' notice to the lot owner, and he was served with a notice which only allowed him seventeen days to have the work done. 1 Swan, *supra.* In the case of the City of Lowell *v.* Wheelock (11 Cush.), the assessment was for a work differing materially from that ordered by the council, and in disregard of an ordinance which required that the materials should be prescribed by the council.

In Starr *v.* Burlington, the ordinance required a resolution of the council and a publication of that resolution, and they appeared to have proceeded without either. 45 Iowa, *supra.*

On the other hand, in *Ex parte* Mayor of Albany, 23 Wend., 279, an assessment was objected to on the ground

that the corporation had not proceeded according to its own by-laws, "prescribing certain economical or precautionary measures relating to street improvements," such as that there shall be no paving till a level shall first have been established by the common council; that before any of the work is done proposals shall be advertised for, that notice shall be first given to enable owners of lots to do their own repairs." The court, Cowen, J., delivering the opinion, say: "It is enough for us to see that the jurisdictional limits prescribed by the state law have not been overgone. The objection is entirely novel, that a by-law passed by a corporation, prescribing to itself certain conditions on which alone an improvement shall be undertaken, or any other regulation made by it, shall so hamper and cripple its powers as to disable it from performing those duties enjoined or authorized by the law of the state."

There is a class of cases where the same strictness with which the council must pursue its charter, is required of some subordinate, in following the ordinances and directions of the council. City of Lowell v. Wentworth, 6 Cush., 221; Reilly v. City of Philadelphia, 60 Penn. St., 467.

Such cases come clearly within the reason of the general rule. This reason certainly applies with less force when the council itself is making an attempt to comply with the ordinance which it has enacted, and it is simply doubtful whether the compliance, though substantially complete, has been in all respects perfect to the letter. If such strictness be the rule, it will become rare indeed for a local assessment to be maintained in the courts.

Appellee's tenth proposition submitted to the court below, the overruling of which is assigned as error:

"The contract entered into between the city and Lucas & Bumphrey provides as follows: It is further understood and stipulated, that before said Lucas & Bumphrey can lay down any portion of said pavements, they must obtain

the written consent of the owner of property situated on the sidewalks, specifying which of the said pavements they prefer, which written consent of the said property owners shall be filed in the mayor's office. No such consent was given. It was a condition precedent to their right to do the work, or to the city to hold the defendant liable therefor."

We extract and adopt from the findings and opinion of the court as follows:

"The evidence in the case at bar is that the pavement was done on defendant's sidewalk by the contractor in accordance with the contract, and that the defendant was called upon to sign a written agreement, specifying what kind of pavement the contractor should put down on his sidewalk, and defendant refused to sign a written agreement, saying that if any pavement was to be laid he wanted it to be of brick.

"The defendant then got the kind of pavement he wished, and the proof is that the materials and workmanship are strictly in accordance with the contract.

"The defendant's sidewalk was not commenced by contractor until more than four months from the time during which the ordinance permitted him to put it down according to the specifications. The work was done according to the specifications, and the city engineer measured the work and reported the same to the city council, and it was assessed strictly according to and in pursuance of the ordinance and entered in the assessment book, and the city paid the contractor for the work, and the defendant received the benefit of the very kind of pavement which he wished, although he had refused to make his selection in writing, and the work was done in a first-class workmanlike manner, and in all respects according to the contract. Under these facts, it is believed that the assessment was valid because the kind of pavement was substantially designated by the city by receiving and paying for the work

after the refusal of defendant to specify that kind of pavement he wished in writing."

In another place the court says:

"It may be conceded that the city could not release the contractor from a substantial compliance with the terms of the contract to the prejudice of the abutting lot owner. Where the city undertakes to receive work of the contractor, which does not substantially come up to the contract, then the lot owner would be entitled to an abatement from the assessed cost of the work; that would be all that defendant would be entitled to complain of. Surely it cannot be seriously urged that every departure from the contract by the contractor is a technical condition precedent, which would defeat the entire assessment, unless the charter or some ordinance made it a condition precedent to the assessment."

In his eleventh proposition submitted to the district court defendant says:

"The assessment of $1.35 per square yard for paving was not valid.

"The argument of the defendant is substantially that since the contract with Lucas & Bumphrey was for the pavement of the sidewalks of many of the streets with brick at a uniform price of $1.35 per square yard of paving, the assessment is invalid by reason of the assumed fact that in the very nature of the work the actual cost per square yard for paving might be a little more on one street, or block, or lot, than on another. As for instance, the distance in hauling to one part of the city is greater than another. This objection, if tenable, would necessitate the making of a special contract for the paving of each particular lot in the city, amounting to about two thousand or more contracts, if there is to be sealed proposals for each lot and a separate contract for paving sidewalks in front of each."

The work to be done by these contractors was the same

in all localities — laying down a brick pavement; and it was certainly reasonable that they should be paid a uniform price, which would constitute the cost assessed against the lot owner. If their contract had been to fill in sidewalks at a uniform price per square foot, without regard to the different amount or depth of filling in different localities, and the assessment had followed the contract, then it might well have been claimed that the lot owners were not assessed, as authorized by the charter, with the "cost" of the sidewalk fronting their lots. The case of Allen *v.* City of Galveston would then have been in point, but is not so under the facts in this case.

In defendant's twelfth proposition it was claimed that the ordinance providing for the assessment was repealed, and in his thirteenth, that the assessment was invalidated by an ordinance providing for a new assessment. The court below negatived both of these propositions, and we content ourselves with adopting its conclusions thereon. So also of its conclusion that the ordinances of the city authorized the institution of the suit.

Appellee's fifteenth proposition:

"The charter gives the power to the city to construct sidewalks, and the cost of the construction of sidewalks shall be defrayed by the owners of the lot or part of lot or block fronting on the sidwalk. The liability of the owner accrues when the sidewalk is constructed. If the city chooses to postpone that liability, it is her own act. She cannot alter rules of limitation. Limitation runs from construction of sidewalks. Limitation of two years applies."

The court held that the assessment did not create a personal liability authorizing a personal judgment against the lot owner. We are of the same opinion. The intention both of the charter and the ordinance appears to be to make the cost a "charge against" the lot, and collectible only by the sale thereof. The principle upon which

such assessments are made is the supposed benefit to the property; and the imposition of a personal liability on the lot owner, under which he may, after the sale of his lot, be held responsible for a deficiency, can hardly be justified, and certainly should only be made by the courts when authorized by the clearly expressed legislative will to that effect.

The court, however, whilst holding that the assessments were neither debts nor accounts within the meaning of the act of limitation of 1879, did hold that they were within the four years' limitation applicable to actions "for which no limitation is otherwise prescribed." R. S., art. 3207. This action was instituted on November 6, 1879, about two months after the Revised Statutes, including the section referred to, took effect, and we are unable to see how that section could materially affect the case. There was no similar provision in the former act of limitations, nor was there any provision therein embracing such an action. If in an action of this sort, limitation as in equitable proceedings not within the terms of the statute, would be governed by the analogies in like cases, we would still be unable to say that the nearest analogy was to be found in an action of debt rather than in a suit for specific performance or upon a judgment. The policy of our law in cases of taxes is clearly indicated by the statute, which precludes the defense of limitation against the payment of any taxes due "either to the state, or any county, city or town." Appendix R. S., p. 40, sec. 16. Although local assessments are not within the terms of this statute, they would seem to be sufficiently within its reason to justify giving it some consideration in seeking for the rule of limitation by analogy.

Without having found it necessary to determine whether, in enforcing local assessments, municipal corporations are within the operation of our statutes of limitation, we conclude that the limitation of four years did

not, at all events, apply to actions on such assessments, prior to the enactment of the Revised Statutes, and that the court erred in holding any of the installments barred.

In this connection we will dispose of the kindred question of the right of the city to recover interest on the assessment according to the provisions of its ordinance. This right was denied by the court on the ground of the want of authority in the city to require interest. The rule is conceded that taxes do not bear interest unless the statute so directs. Cooley on Taxation, p. 300, citing Danforth v. Williams, 9 Mass., 324; Shaw v. Peckett, 26 Vt., 482. The only accessible authority to which we have been cited on the subject of interest on assessments, is a case where it would seem that the contractor was to be paid directly out of the proceeds of assessments, and was himself the plaintiff. The court held that street assessments were not contracts, within the meaning of the statute in relation to interest; that the statute for street improvements not having allowed interest, the contractor or his assignee could recover only the amount of the assessment, without interest. Haskell v. Bartlett, 34 Cal., 281. But here the design of the statute is, that the city itself may pay for the work, and that it is to be reimbursed for the cost at a future day. The city is empowered to provide, by ordinance, the manner in which that cost and the cost of collection may be realized by the sale of the lot. Plainly the city will not be fully reimbursed unless the assessment bears interest, and in our opinion the manifest intention is that the lot shall bear the full burden of the cost. A reference to other portions of the charter tends to confirm this construction. Where assessments are made for paving streets, the charter authorizes the city to issue interest-bearing bonds, having five years to run, and directs the cost to be assessed on the property "fronting on said thoroughfares, to be collected in equal annual payments, not less than five in number," etc. Al-

though nothing is said about collecting interest on the assessment, it can scarely be doubted that the right of the city to interest is implied. Charter, title IV, art. 1.

On the other hand, in providing that sanitary improvements may be made "at the expense of the city," and the expense be assessed against the lot, the recovery by suit of the "expenditure and interest" is expressly provided for. Charter, title VIII, art. 8, sec. 1. We are of opinion that the object of the charter was to empower the city to assume the cost of construction, with the view of postponing the payments by which she was to be reimbursed to such periods as would, in the judgment of the city authorities, be to the mutual advantage of the city and the lot owner; and that it was contemplated that the city might regulate the interest on the installments so as to secure full reimbursement. It follows that the court erred in refusing to give judgment for interest.

Returning to the propositions submitted by defendant, they are as follows:

"The lot in front of which the sidewalk was constructed was, and is to-day, the homestead of Dr. Heard, and assessments for local improvements cannot be enforced against it.

"First proposition: Being the homestead of the defendant when the sidewalk improvement and assessment therefor were made, such assessment cannot be enforced.

"Second proposition: Said lot contains the present defendant's homestead, and exempt from forced sale."

The court found that at the time of the assessment defendant's homestead was on the lot, but that his homestead was afterwards changed to a place outside the city. There is nothing in the evidence to justify us in disturbing this finding; we will add that we have no design to intimate that the defense, if established, would have been of any avail.

We see no error in the rulings of the court in excluding

evidence, or in the rulings on the pleadings. The question is attempted to be made that the city could not recover, unless the entire work of sidewalk improvement had been completed. We see nothing in the statement of counsel under this proposition making it applicable to the case, or indicating that any such question was made or passed upon in the court below; and deem it unnecessary to examine it further.

On the suggestion of counsel that a number of cases involving similar questions are pending in the district court, we have endeavored to respond to all the questions in the case before us, but do not propose to go further.

The assignments of error by the city have all been disposed of in passing on defendant's propositions, with the exception of the fourth, in which it is complained that the city should have been allowed the full amount of the face value of its bonds. We think that the cash value of the bonds when paid out represented the actual cost of the work. If the city's credit was such as to cause her a loss in constructing the sidewalks on a credit, the loss does not constitute a part of the legitimate cost of the work, chargeable on the lot.

There is no error in the judgment because it was only for eighty per cent. of the face value of the bonds.

The judgment will be reversed and rendered so as to allow the city to recover all the installments of the assessment sued on, with interest.

REVERSED AND RENDERED.

[Opinion delivered March 18, 1881.]

ON REHEARING.

GOULD, ASSOCIATE JUSTICE.— The application for rehearing discusses with great force and ability, questions passed upon by this court in the case of Galveston v. Loonie,

and questions passed upon by the supreme court of the United States in the case of Hitchcock v. Galveston, but has far less of force or applicability in the case in which it is filed, a case in which those were not the questions mainly controlling the decision. It combats, most vigorously and ably, the power of the city of Galveston to construct sidewalks on its own credit, or to be paid for otherwise than by the abutting lot owner; but wholly fails to notice the position taken in the opinion, that the interest of the lot owner is confined to the amount of the expense or cost, and that if he is regularly assessed with the right amount, *the proper cost*, it is immaterial to him whether the work was done for cash or on a credit.

The power of the city council to construct sidewalks and to provide by ordinance for the collection of the cost from the owners of abutting lots, is expressly granted, and is not denied. The sidewalks have been constructed, the cost of that construction has been assessed against appellant, the owner of the lots, and if there was an error in the amount of the assessment because of the difference between bonds of the city and cash, that error has been, by the judgment of the court, corrected, so that he is charged only with the proper cash cost of construction. It is not for the lot owner to complain that this cost ought to have been exacted of him in the first instance.

After a careful examination of the application for a rehearing we adhere to the views expressed in the original opinion, and to our conclusion that the judgment be affirmed. The motion is overruled.

MOTION FOR REHEARING OVERRULED.