### I. Lovenberg v. City of Galveston.

Delivered November 11, 1897.

**1. Cities—Street Improvement—Charge Against Homestead.**

A street improvement tax constitutes no charge against a homestead fronting on the street improved.

**2. Same—Same—Charge Against Adjoining Property—Power of Legislature.**

The Legislature has power to authorize cities to make the cost of improving a street a personal charge against the owner of adjoining property.

**3. Same—Same—Owner of Abutting Property—Personal Liability.**

The owner of property abutting on a street improved is personally liable for a tax for such improvement, under a provision in the city charter that the owner of the property fronting on the improved street "shall pay" two-thirds of the cost, and authorizing an action to be maintained for the collection of such assessment against any owner for the amount due for such improvement.

**4. Same—Same—Taxation—Due Process of Law.**

A tax on abutting property, for a street improvement, is not objectionable as depriving a citizen of his property without due process of law.

**5. Same—Same—Same—Uniformity.**

The provision of the Constitution requiring uniformity in the imposition of general taxes for the support of the government, does not prohibit a tax upon abutting property for part of a street improvement.

Appeal from the County Court of Galveston. Tried below before Hon. Morgan M. Mann.

*S. S. Hanscom* and *Lovejoy, Sampson & Malevinsky,* for appellant.

1. A special assessment for a local improvement creates nothing more nor less than a right in rem, and creates no personal liability. City of

Galveston v. Heard, 54 Texas, 445; Raleigh v. Peace, 17 L. R. A., 335; McCrowell v. Bristoll, 20 L. R. A., 653; Dyer v. Farmington, 70 Me., 527; Hammet v. Philadelphia, 65 Pa. St., 151; Seattle v. Yesler, 1 Wash., 571; Wolfe v. Philadelphia, 105 Pa. St., 25; Water Co. v. Caston, 18 N. J. Eq., 519; Palmer v. Stumph, 29 Ind., 329; Bridgeport v. New York, 36 Conn., 256; Alexander v. Baltimore, 5 Gill, 383-396; Hayden v. Atlanta, 70 Ga., 817-822; Virginia v. Hall, 96 Ill., 278; Neenan v. Smith, 50 Mo., 525; St. Louis v. Allen, 53 Mo., 45; Higgins v. Ausmuss, 77 Mo., 351; Macon v. Patty, 57 Miss., 378; Craw v. Tolono, 96 Ill., 255; Taylor *v.* Palmer, 31 Cal., 240; Gaffney v. Gough, 36 Cal., 104; Green v. Ward, 82 Va., 324; 24 Am. and Eng. Encyc. of Law, 77; Elliott on Roads and Streets, 400-369; Cool. on Tax., 607-675; Welty on Assessments, 460.

2. The demand upon the appellant was illegal and unconstitutional, for that it was violative of that provision of the Federal Constitution which guarantees equal protection of the law. Galveston city charter, sec. 130 (b), art. 4; Jaeger v. Burr, 36 Ohio St., 168; Hassen v. Rochester, 67 N. Y., 536, 537; Whiting v. Quackenbush, 54 Cal., 306; White v. Saginaw, 67 Mich., 41; Alexander v. Mayor of Baltimore, 5 Gill, 393-398; People v. Lynch, 51 Cal., 15; Weekes v. Milwaukee, 10 Wis., 242; Railway v. Mackey, U. S., L. Ed., book 32, p. 109; Ins. Co. v. New York, U. S., L. Ed., book 33, p. 1025; Express Co. v. Seibert, U. S., L. Ed., book 35, p. 1035; Charlotte Co. v. Gibbe, U. S., L. Ed., book 35, p. 1051; Hayes v. Missouri, U. S., L. Ed., book 30, p. 578; Walston v. Nevins, U. S., L. Ed., book 32, p. 546; Barbier v. Connelly, U. S., L. Ed., book 28, p. 923; Welty on Assessments, 340.

*R. Waverly Smith*, for appellee.

WILLIAMS, ASSOCIATE JUSTICE.—Appellant sued to recover of appellee the sum of $473.98, which had been assessed by appellee against his homestead, fronting on Avenue I, as the proportion of the cost of paving that street chargeable against such property, and had been paid by him, as he alleged, involuntarily, under coercion of threats to sell such property for the satisfaction of the charge, in order to avoid the beclouding of his title. A general demurrer to his petition was sustained and his suit dismissed, from which action this appeal is prosecuted.

The propositions on which he relies to reverse the judgment are: First, that the alleged tax constituted no charge against his homestead. Second, that he was not personally liable for it. Third, that the attempt thus to charge him and his property was in violation of State and Federal Constitutions, in that it sought to take his property without due process of law, and in that the charges assessed under such proceedings were not equal and uniform, and in that such proceedings denied to him the equal protection of the law. Fourth, that the payment was involuntary.

The first proposition has been definitely decided in appellant's favor by the Supreme Court of this State in the cases of Higgins v. Bordages, 88 Texas, 458, and Storrie v. Cortes, 38 Southwestern Reporter, 154.

The fourth, in view of our decision upon the other two, need not be considered. As that is the only proposition discussed by appellee, we will remark, however, that we are not prepared to hold that the court below properly held, on demurrer, that the payment appeared from the petition to have been voluntary. The allegation was that it was involuntary and induced by duress exercised by means of a threat to sell the homestead of appellant and becloud his title. It was not alleged that the payment was made under protest, nor do we understand that this was essential. A protest, if made, would be only a circumstance to be weighed in determining whether or not the payment was voluntarily made, and it was not incumbent on the pleader to allege his evidence. Unless, therefore, the influences used to induce the payment were such that the court may say, as a matter of law, that they could not have so operated as to make the payment an involuntary one, the allegation that such was its character can not be disregarded. The case is different, in some of its elements, from those of Davie v. Galveston and Baldinger v. Galveston, 16 Texas Civ. App., 13, and we are not prepared to hold that, under the facts alleged, the payment could not have been shown to have been involuntary, had appellant succeeded in making it appear that the charge assessed against him and his property was illegal.

: We are of the opinion, however, that neither the second nor the third contention can be maintained. In the case of Storrie v. Cortes, supra, the Supreme Court, after considering the conflict of authority existing elsewhere upon the question, has deliberately held that it is within the power of the Legislature of this State to authorize cities to make the cost of improving a street a personal charge against the owner of adjoining property. We should follow that decision, even if we thought it erroneous. But we think the decision is correct. The benefit which is generally spoken of as accruing to property fronting on streets which are improved, really accrues to the owner. If that particular property is taken to pay the charge, it is taken from the owner. It is the owner who receives the benefit, and bears the expense, in any view. If the property the value of which is enhanced can not, by reason of its exemption from taxation, be charged, there is no good reason why the owner should not be made, in other ways, to pay for the benefits which he has received. This is as far as the decision referred to has gone, and as far as it is necessary to go in this case. The property of appellant which, but for its exemption, would be subjected to the charge has not been and can not be sold. He does not pretend that the claim asserted against him exceeds the value of the property or the benefits which he received from the improvement. There is no reason, therefore, why he should not be personally liable to respond, if the city had authority to make him personally liable for the cost of the improvement. This depends upon the charter under which the city proceeded, and upon the proceedings taken under it. It is not claimed that there was anything in the proceedings, through which the improvement was made, to exempt him from personal liability, if the charter empowered the city to create such liability.

The provisions of the charter relating to the subject are so lengthy that an insertion of them would extend this opinion to an unreasonable length. The subject is regulated by the four articles of title 10. By article 1 it is provided that, of the cost of paving streets, the owner of property fronting thereon "shall pay" two-thirds and the city one-third; that the owners "shall pay" the whole of the costs of paving sidewalks; that railways occupying streets "shall pay" the one-third which the city would otherwise have to bear; that the city "shall pay" the cost of paving intersections; that property owners "shall pay" the costs of curbings; that "the cost of such improvement *due from* property owners and from the owners, etc., of railways   *   *   *   shall be a special tax and lien against" the property, and shall be due and collected by the city whenever and as soon as such improvements are completed and accepted by the city council. Article 2 prescribes the proceedings by which the city is to determine the expediency of making an improvement. It provides for an estimate of its probable cost, to be shown by a list of lots and their owners, and of railways, and an entry, opposite each piece of property, of such portion of the estimated cost "as the owner is required   *   *   *   to pay," or in case of a railway, such portion as is "chargeable to" the owner thereof. This article further requires that, after the improvement shall have been made, there shall be made another list of the lots, railroads, etc., and their owners, on which shall be entered, opposite each piece of property, such portion of the actual cost as the "owner thereof is required   *   *   *   to pay," and in case of railroads, the portion "chargeable" to the owner thereof; and provides that "said amounts shall be imposed, levied, and assessed by said council on or against said lots, or fractional lots, and on or against the roadbed, ties, rails, fixtures, rights, and franchises of said railways, respectively, and shall be collected by the collector, and shall be a lien upon the property until paid." Article 3 provides for the giving notice of the maturity of the assessments, as ordinances may require, and for the collection of same, and empowers the collector to sell so much of the property on said list on which the assessment has not been paid as will be sufficient to pay the same.

These provisions declaring the assessments a charge against the owner, and that he shall pay them, seem very clearly to contemplate a personal liability on his part. They provide, also, for a lien on the property to secure them "until paid." The right is given to collect from the owner, and to sell in case he does not pay. It might be plausibly contended that a personal liability results from such provisions. If there was any doubt that suit against the person for the assessment could be maintained, it is removed by article 4, which is as follows: "That in addition to the power and authority granted to the city council to collect said assessment as aforesaid, they shall have the further and additional remedy of instituting suit, in the corporate name, in any court having jurisdiction, for the recovery, against any owner of said property, for the amount due for any such work so made, as aforesaid; and the city council shall provide, by resolution or ordinance, under the provisions of this act, for the carrying

out and executing the powers in this title aforesaid, and may adopt such resolutions, and enact such ordinances, and make such rules and regulations, as they may deem necessary."

It is urged that this article only gives an additional remedy to enforce the lien previously declared, and not an additional right against the person. This assumes that no such right had been conferred by the previous articles, which we think is not true. Those articles contemplate a personal obligation to pay the assessments, and article 4, in view of such obligation, gives a remedy to enforce it. The language of the latter section is not simply that suit may be brought to enforce or foreclose the lien. That may be done by the collector by sale. The additional remedy is given "to collect" the assessment. The suit is to be for the "recovery" of "the amount due," and the recovery is to be "against the owner." It would require a disregard of the plain meaning of the language to hold that it does not intend a suit for the recovery of a personal judgment.

A provision in the same language was in the charter of 1871, under which the case of Galveston v. Heard, 54 Texas, 445, was decided, and it is claimed that decision supports the contention of appellant against the existence of personal liability. It is true that, in that case, it was held that neither the charter nor the ordinances contemplated personal liability for the claim therein sued for. But that was a suit for the making of a sidewalk, and not for the pavement of a street, and an examination of the charter of 1871 shows that it made quite a difference between the two. Improvement of streets and sidewalks was not, in that charter, regulated in the same title and by like provisions as is done in the charter now in question.

The construction or repair, etc., of sidewalks was regulated by section 8 of article 2 of title 4, of the former chapter, and it was provided that the cost should be defrayed by the owners of fronting lots, to be collected by sale of the lots, in such manner as the city council should provide by ordinance. No provision was made for suit, or for any other mode of collection, but the city ordinance had provided merely for suits to enforce the liens by sale of the property. The section corresponding to the present article 4 of title 10 had no relation to the collection of the cost of sidewalk improvement, but was embraced as article 4 in title 9, relating only to streets and alleys, and authorized suits only for assessments provided for under that title. This is the reason why it was not referred to in Galveston v. Heard. It plainly had no application to the subject there under discussion. In the case of Roundtree v. Galveston, 42 Texas, 625, which was a suit for the cost of street improvement, it was applicable, and therefore was set out in the report, and the suit was maintained without question. The report of that case leaves it doubtful whether a personal judgment was sought or not, though the statement of the case in the opinion indicates that it was.

Appellant's third contention must also be overruled. That assessments for local improvements, if properly conducted, are not obnoxious to the objection that they deprive the citizen of his property without due pro-

cess of law is well established by judicial authority. It is equally well settled that the provision of the Constitution requiring uniformity of rule in the imposition of general taxes for the support of government, does not so apply as to prohibit the requiring of additional contributions from those so peculiarly situated as to derive especial benefit from a local public improvement. It is true, however, that substantial equality and uniformity of rule must be observed in distributing, among those owning property in the locality improved, the burden to be borne by them in compensation for the special advantages. Any proceeding which discriminates against one in favor of another of those within the district or locality receiving the benefit of the improvement would probably be held violative of both the State and Federal Constitutions. But nothing of the sort is made to appear in this case. All persons owning property on the improved street are charged by the same rule. All are personally liable, and the property of all is charged according to the same principle. All property is charged with the lien, except that which is held to be exempt by law, and that is exempt to all persons alike. If appellant's neighbor's homestead is exempted, so is his own; and if he is personally liable, so is his neighbor. He may be solvent and his neighbor insolvent, but that is an objection that might be urged to all taxation which is not collectible out of specific property. He is not charged with what the other ought to pay, and that distinguishes the present case from many cited by appellant, in which the property of one was excepted, and the cost of improving it distributed among the others. Weekes v. Milwaukee, 10 Wis., 242; People v. Lynch, 51. Cal., 15; Hassen v. Rochester, 67 N. Y., 536.

Without pursuing the subject further, we hold that the money collected from appellant was not illegally collected, and that the demurrer was properly sustained.

*Affirmed.*

Writ of error refused.