E. W. TAYLOR v. WM. BOYD ET AL.

(Case No. 2051.)

63  533
87   37
63  533
88  461

1. MUNICIPAL POWER — CITIES AND TOWNS — IMPROVEMENT OF STREETS. — Power was lawfully conferred upon the city of Houston to cause its streets to be improved by imposing a part of the cost thereof upon the property abutting thereon by frontage. Special Laws of 1883, p. 17.

2. SAME — NOTICE.— No other notice than that required by the charter of the city need be given to the property owners in said city when the assessment is made for such improvements.

3. SAME.— Whenever the cost of improvements in said city, made under the twenty-third section of the charter, shall exceed $1,000, the provisions of section 40 of the charter are applicable and must be complied with.

4. SAME — ACTION.— The owner of a certificate issued for work done in the improvement of a street in Houston, when such certificate has been issued in accordance with the provisions contained in the city charter, may maintain an action thereon against the owner of the property abutting the street improved, as fully as the city might have done had the work been done under its own direction and management.

5. ASSESSMENT FOR STREET IMPROVEMENTS.— There is nothing in the constitution of the state which prohibits the levy of a street improvement tax by the city of Houston on the owner of several lots liable therefor in gross, instead of assessing it separately against each lot.

6. CONSTITUTION CONSTRUED — MUNICIPAL TAXATION.— Section V, art. XI, of the constitution has reference to such taxes as are annually collected for the ordinary purposes of municipal government, and based on an estimate of the value of the entire taxable property in a city; that article of the constitution has no application to assessments on property holders for local improvements adjoining their property and authorized by charter.

7. TAXES.—The words "tax," "taxes" and "taxation," as used in the constitution, without some qualifying word in reference to property, apply to *ad valorem* taxes. Those words when found in article II refer to such taxation as the rule of equality and uniformity can, under well settled and long recognized rules, be applied to.

8. SAME.— Taxes for local improvements in a city, usually termed "assessments," are not subject to the rule requiring equality and uniformity. (Following Roundtree *v.* City of Galveston, 42 Tex., 626.)

9. LEGISLATIVE POWER — LOCAL ASSESSMENTS. — There is in Texas no limit imposed on the legislature as to the amount it may authorize a municipal government to impose by way of assessment on property holders, for local improvements within a city.

10. EVIDENCE.— In a suit upon a street improvement certificate, issued for local improvements in the city of Houston, if the certificate is regular upon its face and it contains all the requisites prescribed in the city charter, it is *prima facie* evidence of every fact necessary to be proved to enable the holder to recover against the owner whose property is liable for its payment. (Following City *v.* Hardy, 35 Mo., 264; City *v.* Armstrong, 38 Mo., 33, and City *v.* Coons, 37 Mo., 48.)

APPEAL from Harris. Tried below before the Hon. James Masterson.

Appellant Taylor, defendant below, was sued by Wm. Boyd, on two " Street Improvement Certificates," dated April 28, 1884, each certifying Wm. Boyd & Bro. to be entitled to the sum of $223.27, from defendant Taylor, for "gravel pavement" constructed in front of his property, lots 8, 9 and 10, block 46, fronting one hundred and fifty feet on Preston street, "as ordered by resolution of the city council, passed on the 9th day of July, 1883."

One certificate was due the 28th day of April, 1884, the other on the 28th day of October, 1884, and both bore interest from date at the rate of eight per cent. per annum.   Each closed as follows:

"This certificate is issued under authority of section 23 of the charter of the city of Houston, and is a tax against said property owner, and a lien on the property described.

"Attest:                                    W. R. BAKER, Mayor.

"JOHN REICHMAN, Sec'y and Treas."

Judgment for plaintiffs for the amount of the certificates and foreclosing the lien on the lots.

The following embraces the substance of all the material allegations in plaintiffs' petition:

1. That the city council, on the 9th day of July, 1883, by a vote of two-thirds of the aldermen elected, declared said improvement necessary for the public interest.

2. That after the passage of said resolution the mayor caused the city engineer to prepare the necessary plans and specifications.

3. That said plans and specifications, after being approved by the city council, were advertised, together with said resolution, and bids were solicited.

4. That G. A. Hill & Co. made a bid, which was accepted, and the contract was awarded to them.

5. That G. A. Hill & Co., for a valuable consideration, and with the consent of the city council, assigned the contract to plaintiffs.

6. That plaintiffs constructed said improvement in accordance with said contract, plans and specifications, and the same was accepted by the mayor on April 28, 1884, "or about that time."

7. That after the acceptance of said bid the mayor "caused to be prepared by said city engineer a roll showing the number of the lots and blocks fronting on that portion of Preston street to be improved, the names of the owners of each lot, part of lot and block, the number of feet frontage owned separately by each person or jointly with others, the cost per square foot frontage of such improvements, and the total proportional cost of such improvement necessary to be paid by each property owner fronting thereon, the correctness of which roll was certified to by said engineer."

8. That said roll was approved by said city council.

9. That defendant's said lots were named in said roll, and the total cost of the improvement charged against defendant as the owner of said lots was shown in said roll to be $446.55.

10. That after the completion and acceptance of said improvements, to wit, on the 28th day of April, 1884, the two certificates

described under the general statement were prepared and delivered to plaintiffs.

11. The petition contained the usual allegations in regard to the amount named in the certificates being due and unpaid, and the court was asked to declare and foreclose the lien.

*Brady & Ring*, for appellant, in support of their first assignment, cited: Secs. 17, 18, art. 1, Const. of Texas; sec. 1, art. 1, Const. of U. S.; Gatch v. City of Des Moines, 3 Am. and Eng. Corporation Cases, 624; Brown v. City of Denver, id., 636; Stuart v. Palmer, 74 N. Y., 183; Santa Clara v. R. R., 13 Am. and Eng. R'y Cases, 207, 208; Cooley on Taxation, 266. See, also, Galveston v. Heard, 54 Tex., 420.

In support of their second assignment, they cited: Art. 13, p. 17, Special Laws, 1883; art. 2, Const. of Texas; art. 8, sec. 3, id.

In support of the fourth assignment, they cited: Edmonson v. Galveston, 53 Tex., 161; State v. Baker, 49 Tex., 763.

In support of the sixth assignment, they cited: Art. 11, sec. 5, Const. of Texas.

In support of the eighth assignment, they cited: Charter City of Houston, sec. 23, p. 17, Special Laws, 1883; Robson v. Osborn, 13 Tex., 309; Devine v. McCulloch, 15 Tex., 491; Yenda v. Wheeler, 9 Tex., 417; Wofford v. McKinna, 23 Tex., 41; Kelly v. Medlin, 26 Tex., 48; Cooley on Taxation, 353–355; Lufkin v. Galveston, 56 Tex., 537; Allen v. Galveston, 51 Tex., 318; Cooley on Taxation, 461, 463, 464; Davis v. Farnes, 26 Tex., 296; Railroad Co. v. Herbeck, 60 Tex., 603.

*Jones & Garnett*, for appellees, that there was no error in the first assignment, cited: City of Galveston v. Heard, 54 Tex., 420.

That there was no error in the second assignment, they cited: Cooley on Taxation, p. 470.

That there was no error in the sixth assignment, they cited: Groesbeeck v. San Antonio, Tex. L. Rev., No. 12, vol. 4, p. 186; City of Galveston v. Heard, 54 Tex., 420; Highland v. City of Galveston, 54 Tex., 527; Allen v. Galveston, 51 Tex., 302; Roundtree v. Galveston, 42 Tex., 612; Cooley on Taxation, pp. 416, 417, 418, 446, and authorities cited in note 2 on p. 446; Doyle v. Austin, 47 Cal., 357; People v. Mayor of Brooklyn, 4 Comst., 419; Howell v. City of Buffalo, 37 N. Y., 267.

STAYTON, ASSOCIATE JUSTICE.— The question whether the legislature could lawfully confer power upon the city of Houston to cause its

streets to be improved and to impose a part of the cost of such work upon the property abutting thereon, by frontage, has been considered in effect, during the present term, in the case of Adams *et al. v.* L. C. Fisher *et al.*, in which the former cases in this state are considered, and without considering the question further, we deem it sufficient to say that it may be regarded as settled by the former decisions, that such power may be and has been lawfully enforced on the city of Houston by its charter. Special Laws, 1883, p. 17.

The charter of the city of Houston provides that whenever, by a vote of two-thirds of the aldermen, it shall be declared necessary for the public interest to improve any street, a resolution shall be passed designating the street, or portions thereof, to be improved, the nature of the improvement to be made, and the material to be used, after which the mayor is required to have plans and specifications of such improvement to be made by the city engineer.

These plans and specifications, after being approved by the city council, are required to be advertised with the resolution before mentioned, and bids solicited for the construction of the work.

The charter further provides that, "after a bid for the construction of such improvement shall have been accepted by the council, it shall be the duty of the mayor to cause to be prepared by the city engineer a roll showing the number of lots and blocks fronting on such street, alley or avenue to be improved, the names of the owner or owners of each lot, part lot or block, and if unknown it shall be stated, the number of feet frontage owned separately by each person or jointly with others, the cost per square foot frontage of such improvement, and the total proportional cost of such improvement necessary to be paid by each property owner fronting thereon. The correctness of said roll shall be certified to by the city engineer, and the roll submitted to the council for its approval. If the roll is approved by the city council the sum of money therein stated and assessed against each property owner, or against one or more property owners jointly, shall be a tax against such owner or owners, and a lien, charge and incumbrance upon the property so held and owned by each."

No other notice than such as is thus given to the property owner being required by the charter, for the reasons given in the case of Adams *v.* Fisher, before referred to, and in the cases therein cited, we are of the opinion that the assessment was legally made without further notice.

The averments of the petition as to the advertisement made of plans, specifications, resolutions, and solicitation for bids are general,

but it nowhere appears that the cost of the contemplated improvement exceeded one thousand dollars, and therefore it is not made to appear that section 40 of the charter has any application to the case.

We, however, deem it proper to say, that in cases of improvements made under the twenty-third section of the charter, where the cost of the improvements exceeds one thousand dollars, the provisions of section 40 are applicable, and must be complied with.

The first, third and fifth assignments need not be further considered.

The second assignment is:

"The court erred in overruling defendant's general demurrer, and first and second special exceptions (so called), because it does not appear from said petition that plaintiffs have any right or authority to maintain this suit, since that portion of said charter attempting to farm out the collection of said tax by authorizing the contractor making such improvements, or his assignee, to collect said tax, or to enforce the collection of the same, is contrary to the provisions of the constitution of this state, and therefore void."

The charter provides that: "The sum assessed against each property owner on said roll shall be divided into two equal parts, one to be payable when the improvements contracted to be made on each respective block shall be completed, and the balance shall be due six months thereafter; for such sums of money certificates shall be prepared and issued, signed by the mayor and attested by the city secretary and treasurer under his official seal; each certificate shall show upon its face the amount for which it is drawn, the name of the property owner from whom the tax is owing, the number of feet frontage, and the number of the lot or lots and block upon which said sum of money is a lien; that said sum of money is a tax against the property owner named, and a lien upon the property described; the date when it will be payable; that it is issued for street paving, naming the street, the date of the resolution authorizing the street to be paved or improved, and that it was issued by authority of this section of the charter. Such certificates, when so issued, shall be delivered to the contractor or person authorized by him to receive the same, as follows: One certificate for one-half the sum assessed against each property owner, when the respective block in which such owner's property is situated shall have been completed, and one certificate for the balance upon the completion of the contract, and the acceptance of the work by the mayor. Such certificate shall bear interest from the date thereof, at the rate

of eight per cent. per annum, which rate shall be expressed therein, and when issued in accordance with the provisions of this section shall be evidence that all the requirements and prerequisites of the law have been complied with. Should the property owner fail to pay the amount of such certificate when the same becomes due, the owner thereof may institute suit for the enforcement of the tax, and the foreclosure of the lien provided for, in any court having jurisdiction."

This action was brought on two certificates issued under this provision of the charter.

Article II of the constitution, to which appellant refers, certainly has no bearing upon the question presented by the assignment; nor can section 3 of article XIII, when considered in connection with the several sections of article XI, have any bearing upon the question. We see no valid objection to the maintenance of this action by the contractor, as fully as the city might have done had the work been done under its own direction and management, and not by a contractor, and especially so when the law expressly authorizes the owner of such a certificate to sue.

This seems to be not an uncommon mode for collecting such assessments. Cooley on Taxation, 470; Chambers v. Satterlee, 40 Cal., 499; Taylor v. Palmer, 31 Cal., 248; N. I. R. R. Co. v. Connelly, 10 Ohio St., 160; City v. Hardy, 35 Mo., 264; City v. Armstrong, 37 Mo., 33; City v. Coons, 38 Mo., 48.

The fourth assignment is:

" The court erred in overruling defendant's general demurrer and third special exception (so called) because it appears that the whole of said tax was levied on all of said three lots in gross, and a lien upon all of them jointly for the full amount of said tax was attempted to be fixed thereby, instead of said tax being apportioned among each of said lots respectively, and a separate lien fixed on each of said lots for its proportionate share of said tax, as required by the terms of said charter and by the provisions of the constitution of the state of Texas."

We are not referred to any provision of the constitution which deprives the legislature of the power to impose a lien upon all the property a person may own abutting on a street or part of a street improved, to secure the payment of an assessment for such improvement.

The charter does not provide that the lien shall be imposed upon each particular lot, when one person owns more than one, for its proportion of the entire cost of the improvement, but requires the

assessment to be made against the owner in proportion to the number of feet frontage owned by him, or by him and some other person jointly; and it declares "If the said roll is approved by the city council the sums of money therein stated and assessed against each property owner, or against one or more property owners jointly, shall be a tax against such owner or owners, and a lien, charge and incumbrance upon the property so held and owned by each."

The sixth assignment is:

"Because the court erred in sustaining plaintiff's exceptions to so much of defendant's answer as set up that the costs of the improvement for which the suit was brought exceeded, in connection with the general taxes on said lots, the sum of two and one-half cents on the dollar of the value of said property."

The answer alleged that the state, county and city tax levied on the lots, against which a lien is sought to be enforced in this case, amounted to two per cent. on their value, and that the assessment amounted to about two and a half per cent. on the value.

The charter of the city of Houston authorizes the collection of a tax not exceeding two per cent. *ad valorem* upon all real and personal property in the city not exempt from taxation, and also contains, before referred to, provisions for assessments.

If section 5, article XI, of the constitution has application to assessments for local improvement, then the assessment by force of that section would be invalid under the averments of the answer; for, within itself, it would amount to more than the charter of the city permits it to collect, the legislature having limited its general power of taxation to the levy and collection of a tax less than the maximum tax permitted by the constitution.

It then becomes necessary to inquire whether the section of the constitution referred to applies to assessments of the character of that involved in this case.

This section of the constitution bears evidence that it has reference to such taxes as are annually collected for the ordinary purposes of municipal government — to taxes based upon an estimation of the value of the entire taxable property in a city, from which an estimate is made of the per cent. of taxation, on this value, which will raise the sum necessary to be raised to meet the current annual want.

Assessments are not of that character, but are charges imposed for purposes which do not necessarily require that they be imposed annually, or with reference to time; nor are they usually based upon a percentage of the value of the taxable property of a city, but

upon the real or supposed benefit resulting from the improvement of the property on which the specific charge is laid; nor does the value of all the taxable property of a city in any way serve to determine the extent of the charge which shall be imposed on property benefited.

The word "taxes" is defined as "the enforced proportional contribution of persons and property levied by authority of the state for the support of government and for all public needs."

As thus defined, assessments are or may be taxes, but do the provisions of the constitution of this state embrace assessments in the limitations imposed on the power of taxation?

The words "tax," "taxes" and "taxation," as used in the constitution, without some qualifying word in reference to property, evidently mean an *ad valorem* tax, taxes or taxation. Section 1, article 8, declares that "all property in this state, whether owned by natural persons or corporations, shall be taxed in proportion to its value," and to this the preceding provision, that "taxation shall be equal and uniform," applies.

It also declares that "the legislature may impose a poll tax," and that "it may also impose occupation taxes," and that "it may also tax incomes;" but all these methods of taxation are subject to the rule requiring equality and uniformity, which, in reference to occupation taxes, is regulated by the class of subjects taxed. Such being the use of the words in article 7 of the constitution, when in no way qualified, it is to be presumed that they are used in the same sense in article 11.

The words, when found in article 11, must refer to such taxation as the rule of equality and uniformity can, under well settled and long recognized rules, be applied to. It is also to be presumed, when similar language was found in former constitutions, that it was intended to use the same language in the present constitution in the sense which had been given to it in the courts of the state. The language used in the constitution preceding the one now in force was in most respects identical with that used in the present, and, prior to its adoption, it was settled that taxes for local improvements, usually termed assessments, were not subject to the rule requiring equality and uniformity    Roundtree *v.* City of Galveston, 42 Tex., 626.

It must then be held that as the taxes referred to in the constitution, and upon which limitations are placed, are all taxes subject to the rule of equality and uniformity, that assessments for local improvement of streets and like works, by which benefit results to con-

tiguous property, are not embraced in the limitations found in the constitution as to the amount of the charge which may be imposed for such purpose, unless such assessments are embraced in the language used.

It is well settled that the rule that " taxation shall be equal and uniform " has not been, and in the nature of things cannot be, applied to such local assessments. Roundtree *v.* City of Galveston, 42 Tex., 626; Allen *v.* Galveston, 55 Tex., 320; Cooley on Taxation, 444, 446; Dillon on Mun. Corp., 777, 778, 755 *et seq.*

The result of the cases bearing upon the question whether, under the words " tax," " taxes " and " taxation," assessments for local improvements are embraced, is thus stated: " Some of the cases assume the narrow ground that the constitutional provisions refer solely to state taxation, or that, if they go further, to the general taxation for state, county and municipal purposes; but the view generally expressed is, that though assessments are laid under the taxing power, and are in a certain sense taxes, yet that they are a peculiar class of taxes and not within the meaning of that term as it is usually employed in our constitutions and statutes." Cooley on Taxation, 446. The author here cites a large number of cases illustrating the question.

The same question is considered by the same author, and by another equally distinguished by his learning (Cooley's Constitutional Limitations, 618, 619; Dillon on Muncipal Corporations, 754–757, 777, 778), and in the notes to these citations give very full reference to cases illustrating the views of different courts upon the question, which, for the want of time, cannot be reviewed in this opinion.

The power of the legislature over the subject of assessments for local improvements is to be measured by its own will, in the absence of some constitutional restriction; and we find none such in the constitution of this state, where the power is used for the purposes for which that method of taxation has so long been deemed lawful.

The eighth assignment is:

" Because the court erred in rendering judgment for the plaintiff, since the evidence introduced on said trial was insufficient to prove the necessary allegations in said petition, in this: (1) No evidence was introduced showing that said certificates were issued in accordance with the provisions of section 23 of said charter. (2) No evidence was introduced showing that said contract made by G. A. Hill & Co. with said city was in fact assigned to plaintiffs, or that such assignment was made with the consent of said city, as alleged (3) No evidence was introduced showing that either before or after

the issuance of said certificates, or before or after the delivery of the same, said contract was performed in good faith and completed, and the work accepted by the mayor, as required by said charter. (4) Because no evidence was introduced showing that defendant is or ever was the owner of said three lots."

This action, as before stated, was brought on two certificates issued in accordance with the requirements, as to form and substance, of that part of section 23 of the charter of the city of Houston which is hereinbefore set out.

The petition avers a substantial compliance with the requisitions of that section of the charter, and the performance of the street work, to entitle the appellees to the certificate; but there was no proof whatever to support the averments of the petition except such as the certificates alone under the law furnish.

The certificates purport to have been signed by the officers required by the charter to sign them, and purport to be under the corporate seal of the city of Houston, and they come from the hands of the persons whose right they evidence; and this, we are of the opinion, was sufficient to show that they were signed and delivered by the proper officers of the city to the appellees, which was an issuance. There was no objection urged to their introduction on the ground that there was no proof of the genuineness of the signatures of the mayor and secretary and treasurer.

The sole objection went to the fact that there was no proof, outside of that furnished by the certificates themselves, that the facts existed which authorized the officers to issue the certificates.

We have, then, the naked question, whether the declaration contained in the charter, that "such certificate, . . . when issued in accordance with the provisions of this section, shall be evidence that all the requirements and prerequisites of the law have been complied with," shall be given the effect which the ordinary use of the language used would entitle it to.

The word "evidence," as here used, is used in the sense of the word "proof," but the statute does not declare that it shall be conclusive evidence. It means, then, that the certificate shall be *prima facie* proof of some fact or facts. What are those facts? It is given for the express purpose of evidencing the liability of the appellant, and his duty to pay to the appellees the sum of money named in the certificate.

Upon what did the liability of the appellant to pay, and the right of the appellees to receive, the sums named in the certificates depend?

Certainly upon the performance by the city council and other offi-
cers of all such acts as were made necessary to be done, by the
terms of the charter, to authorize the making of an assessment
against the property of the appellant, and upon a compliance by the
appellees with their contract to do the work.

These were the "requirements and prerequisites of the law"—
the things essential to and preceding the liability of the appellant's
property and the appellees' right to receive the named sums, and to
enforce the payment of the same through the lien given by the
charter.

The charter declares that the certificate, when issued in accord-
ance with the provisions of this section, shall be evidence that all
these things existed prior to the issuance of the certificate.

The contents of the certificates are most minutely prescribed in
the charter, and we see no good reason for holding that they were
not *prima facie* evidence of every fact necessary to be proved by
the appellees to maintain their action.

This, however, did not interfere with the right of the appellant to
defeat the case thus made, by opposing evidence, but he offered
none.

The proposition of the appellant is, that it was incumbent on the
appellees to prove every fact which entitled them to the certificates,
and gave power to the officers to issue them. That the certificates
only become evidence when the requirements and prerequisites of
the law have been otherwise proved; if this were true, as evidence
the certificates would be valueless, for they could only be used when
they were no longer necessary.

In support of this proposition we are referred to the line of de-
cisions made under the act of 1848 (H. D., 3145), beginning with the
case of Yenda v. Wheeler, 9 Tex., 409.

That statute provided that a tax collector's deed, " when recorded
according to law, shall be *prima facie* evidence that all the requisi-
tions of the law have been complied with in making such sale;" and
the cases referred to very properly held, under this statute, that the
deed was only *prima facie* evidence of the regularity of the sale,
but not evidence of the facts which would give power to sell. The
statute limited the operation of the deed in this respect.

Such, however, is not the character of the statute under consid-
eration.

Many instances are found in the books in which tax deeds and
other instruments, under statutes so declaring, have been held *prima
facie* evidence of facts which the law declares they shall so evi-

dence, and the validity of such laws cannot be questioned. Cooley's Const. Lim., 452, 453; Cooley on Taxation, 355; Burroughs on Taxation, sec. 119; Blackwell on Tax Titles, 79. In the notes to these authorities the cases bearing on the question are fully cited.

Where certificates issued by a city engineer were delivered to a contractor who had made local improvements, as the evidence of his right to recover against the property charged, under a statute very similar to that before us, declaring the certificate *prima facie* evidence of the contractor's right to recover, such was held to be the effect of the certificate. City *v.* Hardy, 35 Mo., 264; City *v.* Armstrong, 37 Mo., 33; City *v.* Coons, 38 Mo., 48.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered March 27, 1885.]