### No. 1950.

### TEXAS TRANSPORTATION COMPANY *v.* WM. BOYD & BRO.

1. STATUTE CONSTRUED—CITY CHARTER.—The twenty-third section of the Charter of the city of Houston is neither violative of the federal or State Constitution. The certificate authorized by that section, when issued, signed by the proper officer, and in the form required by the charter, is prima facie evidence of the right of the holder to recover against the person whose property is liable for the claim recited in such certificate; though a defendant may show any fact which will defeat the right of the holder of the certificate to recover thereon.

2. CASES FOLLOWED.—Taylor v. Boyd, 63 Texas, 533, and Adams v. Fisher, 63 Texas, followed.

3. EVIDENCE—SAME.—If in a suit upon a certificate of the character above referred to, the defendant shows when the certificate is offered in evidence that the contractor to whom it issued, or the city authorities, had failed to perform any act required by law as pre-requisite to rendering city property liable for the improvement for which the certificate issued, it ought to be excluded. Its holder must prove the fact that would entitle him to recover on it.

4. CITY CHARTER—IMPROVEMENTS.—Unless the provisions of a city charter referring to the method of contracting for city improvements, and which in their nature are designed for the protection of the citizen, are substantially complied with, property fronting on a street to be improved can not be made liable for such improvements.

5. CITY CHARTER—CONTRACT FOR CITY IMPROVEMENTS.—The city council of the city of Houston has no power to make a contract for street improvements which is to constitute a charge upon the property of adjacent proprietors, when the contract, as an entirety, provides for the making of and pay for improvements not contemplated by the resolution under which the contract is made, or the published call for bids. If

a certificate issue for work performed under such a contract it can not be admitted in evidence, even to establish a claim for so much of the work as might lawfully have been contracted for, but the claim of the certificate holder must be established by other evidence.

APPEAL from Harris. Tried below before the Hon. James Masterson.

*Waul & Walker,* for appellant, on their proposition that an Act of the legislature, giving authority to a municipal corporation to make improvements for the *public interest,* without providing any rule of apportionment by which any part of the expenses is required to be paid by the corporation, and without respect to the benefit or injury conferred upon the property assessed, is arbitrary, oppressive and unjust, and without due process of law, cited Stuart v. Palmer, 74 New York, 184; Tidewater Co. v. Coster, 18 New Jersey Equity, 518; Matter of Canal Street, 11 Wendell, 154; Hammett v. Philadelphia, 65 Pennsylvania State, 146; Seely v. Pittsburg, 82 Pennsylvania, 360; Thomas v. Gain, 35 Michigan, 155; Macon v. Patty, 57 Mississippi, 378; Cooley on Taxation, 416 to 473; Cooley on Constitutional Limitations, sections 619 to 636; 2 Dillon's Municipal Corporations, sections 596 to 600, first edition; section 761, page 8, second edition; 1 Desty on Taxation, 479.

On their proposition that the liability of the appellant to pay and the right of the appellees to receive the amounts named in the certificates, were dependent upon the performance by the city council and its officers of all such acts as were required by the charter, and when it is made to appear by the testimony that the powers conferred and the prerequisites were not strictly performed by the council and officers, no liability will attach to defendant or his property, they cited Taylor v. Boyd, 63 Texas, 544; Lufkin v. Galveston, 56 Texas, 538; Allen v. Galveston, 51 Texas, 318; Davis v. Farnes, 26 Texas, 296; Massing v. Ames, 37 Wisconsin, 645; Wheeler v. Chicago, 57 Illinois, 415; Becker v. Howard, 66 New York, 5; Cooley on Taxation, 464, 465; Burroughs on Taxation, section 148; 1 Desty on Taxation, 475; 1 Dillon on Municipal Corporations, section 89; 2 Dillon on Municipal Corporations, sections 769, 811.

*Jones & Garrett,* for appellees.

STAYTON, ASSOCIATE JUSTICE. The city council of the city of Houston, on March 3, 1884, resolved "that Willow street be paved

from the north abutment on which the San Jacinto bridge rests to Wood street, according to the following specifications, to wit: If gravel be used, the street must be graded to a depth of twelve inches below the established grade line, and the surface of the excavated grade must be arranged parallel to the finished road surface by sloping it from the centre towards the sides of the street, and must conform in every respect with the profile of the cross streets. After the street has been properly graded, gravel (if determined upon) to an average depth of eighteen inches will be placed thereon, covering the street from curb to curb, beginning at the corner of the street at twenty inches (20) and sloping the same to the gutters, to a depth of sixteen inches."

The resolution then proceeded to direct how the gravel should be put down, and made provision for the general conduct of the work. It also provided that: "bids will be received for graveling per cubic yard, * * * for grading per cubic yard, and including leveling, rolling, smoothing of surface, and tamping of material furnished," all of which was to be approved by the proper officers of the city.

In pursuance of that resolution and the charter of the city, the mayor caused said resolution, and in connection with it an advertisement for bids, to be published in The Houston Post, but for what period of time does not appear. This advertisement, which, as before said, contained the resolution giving specifications of the work to be done, contained the following: "Bids will be received for gravel per cubic yard, * * * for grading per cubic yard, to include leveling, rolling, smoothing and tamping." The advertisement required all bids to be "handed in by three (3) o'clock p. m., on the eighth day of March, 1884," and reserved the right to the city to reject any and all bids.

After that advertisement was made, William Boyd & Brother made a bid to do the work, which was as follows:

" To the Mayor and Board of Aldermen, City of Houston :

" Gentlemen: We hereby beg to make you following proposition, viz., to pave, grade, &c., Willow street, from north abutment on which the San Jacinto bridge rests to Wood street, north side of Buffalo bayou, with grade in strict accordance with specifications published in Houston Daily Post and dated March 3rd, 1884, as follows: For excavating, grading, leveling, &c., per cubic yard, 40 cents; gravel, per cubic yard, $2.35; guttering, per lineal foot, 45 cents. Very respectfully,

" WM. BOYD & BRO."

At a meeting of the city council, on May 8, 1884, the bids of different bidders were acted upon, and that of William Boyd & Brother accepted, and the contract was given to them as the lowest and best bidders; the resolution accepting the bid reciting its terms.

Subsequently, a contract was drawn up and signed by the mayor of the city and by William Boyd & Brother, and this contract had attached to it and made a part of it the resolution declaring an intention to have the work done, giving specifications, and directing an advertisement to be made, as also the bid made by William Boyd & Brother to do the work. The resolution stated that the cost of the work was to be made a charge upon the property fronting upon that part of the street to be improved.

The twenty-third section of the charter of the city of Houston provides for the issuance of certificates to contractors containing certain requisites, and the charter declares that such a certificate "shall be evidence that all the requirements and prerequisites of the law have been complied with."

William Boyd & Brother brought this action on two certificates reciting the facts required by the charter, showing that the Texas Transportation Company was indebted to them in the sum of two thousand two hundred and seventy-nine dollars and thirty-nine cents, on account of improvements, before mentioned, made in front of property owned by that company.

The cause was tried without a jury, and a judgment was rendered in favor of the plaintiffs for the full sum claimed, which directed the sale of the property in front of which the improvement is claimed to have been made, to pay it.

Many objections are now urged to the proceedings in the court below.

1. It is claimed that the twenty-third section of the charter of the City of Houston is in violation of the Constitutions of the United States and of this State. That question was considered in the case of Taylor v. Boyd, 63 Texas, 533, and a like question in Adams v. Fisher, in same volume, and such legislation held not to be unconstitutional. Nothing has been presented in this case, to cause us to doubt the correctness of the former decisions, involving in substance the same questions.

2. The certificates, made the foundation of this action, were offered in evidence, over the objection of the defendant, who in the court below, as here, urged that the certificates could not be received in evidence until it was found that every act had been

done by the officers of the city of Houston, and by the plaintiffs, necessary to entitle the latter to recover from the defendant or its property the sum sued for. This question was also considered in the case of Taylor v. Boyd, 63 Texas, 533, and it was held that such certificates, signed by the proper officer and in the form required by the charter, were prima facie evidence of the right of the holder to recover against the person whose property is liable for the claims recited in them. While this is true, it is the right of a defendant to show any fact which will defeat the right of a holder of such a certificate to recover, in part or in whole.

A defendant may doubtless show the non-performance by the city authorities or by a contractor of any act in law necessary to be done before the cost of such an improvement can be imposed upon the property in front of which it is made. If any such fact is shown, when the certificate is offered, it ought to be excluded, and its holder required to prove the facts which would entitle him to a recovery; but, if such fact be not then shown, the certificate must be admitted. After it is admitted, however, it is still the right of the defendant to show any fact which will defeat the prima facie right of the plaintiff, established by the certificate. Such evidence, if introduced, destroys the effect of the certificate as evidence, in that it shows a fact or facts which made the issuance of the certificate unlawful.

In this case the defendant offered no evidence, when the certificates sued on were offered, showing their invalidity, and they were therefore properly admitted, but it subsequently offered the records of the city council, which showed the facts we have before stated in reference to the terms of the resolution to make the improvement, specifications of the work to be done, advertisement for bids, bid, its acceptance and contract under it. The plaintiffs made no proof other than such as the certificates sued on afforded.

On this state of facts the question arises, is there evidence sufficient to show that the contract, which is the basis of the plaintiff's right, was entered into without authority in the city council or the mayor to make it?

The records of the city council, showing the proceedings which led to the contract, are conclusive against the plaintiffs as to any fact therein affirmatively appearing, for the contract was made under them, refers to them, and they thus became a part of it.

The improvements were such that their cost would exceed one thousand dollars.

The fortieth section of the charter provides "that all works of improvement and public works for said city, the costs of which will exceed the sum of one thousand dollars, shall be let to the lowest or best bidder in the discretion of the council, by sealed proposals, and no contract shall be made or entered into until the plans and specifications for such work or improvement shall have been prepared and submitted to the council and adopted by it, and an advertisement published in at least four issues of some daily paper published in the city, inviting bids therefor and stating the time when such sealed proposals will be opened. * * * No bid shall be considered unless made in accordance with the plans and specifications, and no allowance for extra work shall be made or paid for."

There must be plans and specifications, and the bids must be made in accordance with and in subordination thereto. This provision of the charter, as well as that part of the twenty-third section which declares that "it shall be the duty of the mayor, after the passage of such resolution, to have the necessary plans and specifications for such improvements prepared by the city engineer, which plans and specifications, after being approved by the city council, shall be advertised, together with the resolution aforesaid, and bids be solicited for the construction of such improvements," were intended for the protection of the citizen; and unless they, and all others of a like character, are substantially complied with, property fronting on a street to be improved can not be made liable for the cost of such improvements. The city council recognized this fact.

It caused plans and specifications to be made, and although it does not affirmatively appear, it may be inferred that they were made by the city engineer. The plans and specifications were approved by the city council, as is evidenced by the resolution offered in evidence.

The resolution containing the plans and specifications was published as a part of the advertisement for bids, and if the bid accepted, and the contract made under the bid and its acceptance, were in accordance with the adopted and published plans and specifications, the certificates issued, if there be no defects in the other proceedings proved, would be sufficient evidence that the publication was made for the requisite period of time.

Were the bid and contract made in accordance with the adopted

and published plans and specifications?  The plans and specifications which we have above set out contemplated the grading of the street, and after this was done that the street should be graveled; the manner and extent of the grading and graveling was determined.  Bids for the grading and for graveling, at so much per cubic yard for each, were requested.  A bid for this work was made, with an agreement to execute it as the plans and specifications on which the bid was made required; but neither the bid nor the contract made under it stopped there. The bid contained a proposition for guttering at forty-five cents per lineal foot, and that bid was accepted and a contract made, of which the proposition containing it was made a part.

The work contemplated was, as far as we can see, an entirety; the grading and graveling of the street in the specified manner was the work which the owners of property were advised by the resolution and advertisement would be done, and with the cost of which their property would be charged.  If other work was to be done as a part of that contemplated by the resolution, they were entitled to know that fact, through the resolution and published call for bids, and until this information was thus given the city council had no lawful power to accept bids and make a contract for other work, with the cost of which the property of the citizens was to be charged.

The appellees, however, urge that the guttering was necessarily a part of the improvement to be made.  The resolution, which is required to speak upon that subject, and the published call for bids did not say so, and we have no judicial knowledge of any such fact.  The appellees, certainly did not so consider it, for, with a full knowledge of the plans and specifications and calls for bids, they were unwilling to have it understood that the grading and graveling of the street, strictly in accordance with the plans and specifications, would require them to construct gutters; and, for this reason, they made a bid expressly covering that work.

It is admitted to be a part of the improvement of the street, the cost of which, without the gutters, would exceed one thousand dollars, and we are of the opinion that in so far as the contract seeks to impose a charge upon property for the cost of gutters, the contract was made without authority.

It seems to us, however, that the contract is divisible, and that the appellees, upon proper proof, would be entitled to recover the contract price for grading and graveling the street; but we have

no such evidence before us as would enable this court to render a judgment in the case.

This brings us to consider how far, if at all, the certificates sued upon can be used to prove any fact necessary to a recovery by the appellees. It has been shown by evidence, which the appellees can not well controvert, that the certificates do not speak the truth. It has been shown that there was no authority to execute them, although certificates for a different sum might, possibly, have been lawfully issued; thus they are stripped of the effect which the statute would give to them as evidence, had they been executed under lawful power. They do not stand as does evidence on which suspicion has been cast by impeaching evidence, which, however, may still be considered; but stand as instruments executed without authority, and shorn of effect as evidence to establish any fact against a property owner who was no party to their making.

To entitle the appellees to a judgment, they will have to prove the same facts as they would have to prove had the certificates on which they sue never been executed.

The judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered December 14, 1886.