WILLIAM AND MARY HIGGINS v. I. R. BORDAGES.

No. 254.

1. **Homestead—Street Assessments.**

The Constitution exempts homesteads from forced sale for the payment of assessments for local city improvements......... ........................ 461

2. **Homestead—Taxes Due Thereon.**

The term, "taxes due thereon," as intended in section 50, article 16, of the Constitution, does not include assessments for local improvements by a city or town .. .......................................... ..:............ 462

3. **Case Overruled.**

Lufkin v. City of Galveston, 58 Texas, 545, overruled so far as it holds the homestead liable to forced sale for city assessments for local improvements— streets, sidewalks, etc....................................... ........ 464

ON MOTION FOR REHEARING.

4. **Jurisdiction of Question.**

The record in this case contained, in the statement of facts, the petition in the foreclosure suit for the assessment upon which default judgment was rendered, with order of sale under which defendant in error claimed; in said petition it was alleged, that the plaintiffs in error owned and occupied the lots against which the lien was asserted. Sale was made under the foreclosure, and the lots were purchased by defendant in error. These facts, appearing in the record, involved consideration of the homestead rights of plaintiffs in error. The action was by the purchaser under the decree foreclosing the alleged tax lien to recover of Higgins and wife their homestead condemned and sold to satisfy the assessment for street improvements ...................... ....................................... 465

5. **Stare Decisis.**

Where a decision of this court is considered to be antagonistic to the express provisions of the Constitution of this State, the doctrine of stare decisis can not be invoked to sustain such decision ................................ 467

ERROR to Court of Civil Appeals for First District, in an appeal from Jefferson County.

*Greer & Greer*, for plaintiffs in error.

*J. F. Lanier*, for defendant in error.

The questions decided by the court were not discussed by counsel on either side in the original briefs.

BROWN, ASSOCIATE JUSTICE.—The city of Beaumont was duly incorporated under the general laws of the State. The city adopted an ordinance for the construction of sidewalks in the city, providing, that if the abutting property owner, upon notice, failed to make the sidewalk, the city would construct it, and the cost should constitute a lien upon the lot abutting upon it; and providing also for a foreclosure of the lien by suit in any court having jurisdiction.

William Higgins and his wife, Mary, were living at the time upon the lot in suit, as their homestead, and continued to live upon it as a homestead from that time to the time of the trial of this case. Notice was given William and Mary Higgins to build the sidewalk, and they having failed to do so within the time prescribed by the ordinance, the city had the sidewalk constructed at a cost of $20. Higgins refusing to pay the cost of construction, suit was instituted in the District Court of Jefferson County by the city of Beaumont against William and Mary Higgins, as husband and wife, to foreclose the lien upon the lot. The petition in that case alleged, that Mary and William Higgins were husband and wife; that they occupied the lot at the time of the construction of the sidewalk; and the judgment entered described the lot as occupied by William and Mary Higgins. The petition alleged, that the city complied with the requirements of the general law and the ordinance passed by the city council in making the sidewalk.

Judgment was rendered by default against William and Mary Higgins, foreclosing the lien of the city of Beaumont for the cost of said sidewalk upon the lot in question. An order of sale was issued and the lot sold, when the plaintiff, Bordages, purchased it for $35. He says in his evidence in this case that the lot was worth $600. He says, also, that he knew at the time that it was the homestead of the defendants, William and Mary Higgins.

Bordages sued Higgins and wife for the lot in trespass to try title, and the District Court of Jefferson County, upon a trial before the court, gave judgment for plaintiff for the lot, from which judgment the defendants, Higgins and wife, appealed to the Court of Civil Appeals, which affirmed the judgment of the District Court.

If the District Court of Jefferson County had jurisdiction of the subject matter involved in the suit of Beaumont v. William and Mary Higgins, then the judgment is not subject to collateral attack, and the judgment in this case must be affirmed. If, however, the court did not have jurisdiction of the subject matter in that suit, then that judgment was void, and a sale under it did not confer title upon Bordages, and the judgment in this case must be reversed.

The petition having alleged that William and Mary Higgins were husband and wife, and that they occupied the land, in effect alleged, that the lot was their homestead, which is in effect the recital of the judgment; besides which, the proof fully establishes that fact without contradiction.

The court did not have jurisdiction of the amount of the demand, and if the assessment for sidewalk did not by law have a lien upon the lot, then the court had no jurisdiction.

It has been held by this court in a number of cases, that under the charter of the city of Galveston, in which there is language identical with article 376, Revised Statutes, the city had a lien for like claim. Assuming, then, that ordinarily, that is, if the property were not homestead, the lien would exist in favor of the city, the question pre-

sented for determination is, can the Legislature give a lien upon a homestead for such assessments?

The Constitution of this State, article 16, section 50, reads as follows: "The homestead of a family shall be and is hereby protected from forced sale for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon; and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead.  *  *  *  No mortgage, trust deed, or other lien on the homestead shall ever be valid except for the purchase money therefor, or improvements made thereon, as herein before provided, whether such mortgage or trust deed or other lien shall have been created by the husband alone, or together with his wife."

By the terms of the foregoing section of the Constitution, the homestead is unmistakably exempt from forced sale for every kind of indebtedness which is not embraced in one of the three classes of debts named therein.

The claim for which suit was instituted in the case of The City of Beaumont v. William and Mary Higgins was not for the purchase of the lot, nor for a part of the purchase money; neither was it for improvement thereon under a contract made as required by the Constitution. It necessarily follows, that it can not be enforced upon the homestead, unless it comes within the meaning of "taxes due on it."

We will examine the question as to whether or not the assessment for building sidewalks is a tax within the terms of the Constitution as above quoted.

Article 8, section 9, of the Constitution, contains this provision: "No county, city, or town shall levy more than 25 cents for city or county purposes, and not to exceed 15 cents for roads and bridges, on the $100 valuation, except for the payment of debts incurred prior to the adoption of this amendment; and for the erection of public buildings, street, sewer, and other permanent improvements, not to exceed 25 cents on the $100 valuation in any one year, and except as in this Constitution otherwise provided." If the sidewalk improvement is a tax authorized by the Constitution, it must be embraced in the provision for streets, is limited in amount to 25 cents on the $100, and must be levied as an ad valorem tax. Such a tax might be levied under this section of the Constitution, if authorized by law; but the assessment in this case is clearly not an exercise of the power granted in the language above quoted. If it rested upon that for its support, it would be void, because it is not uniform and equal, and exceeds the limit in amount.

Article 11, section 5, of the Constitution, is in this language: "Cities having more than 10,000 inhabitants may have their charters granted or amended by special act of the Legislature, and may levy, assess, and collect such taxes as may be authorized by law; but no tax for

any purpose shall ever be lawful, for any one year, which shall exceed 2½ per cent of the taxable value of the property of such city," etc.

The city of Houston, having more than 10,000 inhabitants, levied under its charter taxes to the amount of 2 per cent, and in addition, ordered the paving of streets, and that a part of the cost be assessed upon the abutting property. Such assessment having been made upon the property of a citizen, which amounted to about 2½ per cent of its value, making 4½ per cent when added to the general tax, suit was instituted to enforce it.

In the case of Taylor v. Boyd, 63 Texas, 533, the validity of the assessment was contested, upon the ground, among others, that it, with other taxes levied, exceeded the constitutional limit. In a well considered opinion by Judge Stayton, this court held, that the assessment was not a tax within the meaning of the language, "tax for all purposes;" and it was enforced against the property. If the assessment is not included in this broad language, then it is certainly not a tax within the meaning of that word as used in any part of the Constitution. If it is a tax for any purpose, it could not be held not to be embraced in the language there used; a tax for any purpose must be within the terms, "tax for all purposes."

Article 8, section 1, of the Constitution of this State, contains this language: "Taxation shall be uniform and equal. All property in this State, whether owned by natural persons or corporations other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be prescribed by law." It has been held by this court in a number of cases, and also by courts of many other States, that this and like provisions do not apply to assessments of this character, for the reason, always assigned in such cases, that the assessments are not taxes within the intent and meaning of the Constitution. Taylor v. Boyd, 63 Texas, 533; Roundtree v. Galveston, 42 Texas, 612; Allen v. Galveston, 51 Texas, 320.

If the section of the Constitution under consideration had exempted homesteads from the payment of taxes, under the authorities in this State and in many others, it must have been held by this court, that the exemption would not relieve such homesteads from liability for assessments for local improvements, because it is held by the courts, almost unanimously, that assessments of that character are not taxes within the meaning of such statutes and Constitutions, notwithstanding the language in many cases has been as comprehensive as it could be made, without expressing the very kind of demand here asserted. County of Harris v. Boyd, 70 Texas, 241; Matter of Application of Mayor, etc., 11 Johns., 77; Northern Liberties v. St. Johns Church, 13 Pa. St., 104; Matter of College St., 8 R. I., 474; Worcester Ag. Society v. Mayor, 116 Mass., 189; Shehan v. Hospital, 50 Mo., 155; Mayor v. Greenmount Cemetery, 7 Md., 517; City of Paterson v. Society, 4 Zab. (N. J.), 385; Trustees v. Chicago, 12 Ill., 403; Cool. on Tax., 207, note 3. If the use of the same words would not have included this

character of claim if it had expressed an exemption from taxes, how can it be said that it does include it when used to subject the homestead to the payment of taxes? We can see no sound reason for varying the meaning of the language, because in the one case it would subject and in the other exempt the property.

The Legislature of this State enacted a law, which was approved August 21, 1876, empowering the collectors of taxes for counties, cities, and towns to sell the property of delinquent taxpayers for the purpose of collecting unpaid taxes. Assessments for shelling the streets of the city of Galveston had been made against the property of certain citizens who refused to pay, and under this act the collector of the city advertised the property upon which the assessments were made for sale to pay the unpaid assessments. Allen sued out an injunction against the sale, and the court held, that the law did not confer power upon the assessor to sell the property for such assessments, because assessments of that character were not taxes within the meaning of that act. Allen v. Galveston, 51 Texas, 302. If an act of the Legislature authorizing the sale of property for taxes unpaid would not empower the collector to sell for assessments for local improvements, it would seem, that with equally strong and cogent reasoning it can be held, that the authority in the Constitution to sell the homestead for like taxes would not authorize the forced sale of the homestead for the same character of assessments. We can see no sound reason for drawing any distinction between the two cases, when in fact no distinction can exist.

In the case of Taylor v. Boyd, cited above, the court said: "The words 'tax,' 'taxes,' and 'taxation,' as used in the Constitution, without some qualifying words, in reference to property, evidently mean ad valorem tax, taxes, and taxation." In the section of the Constitution under consideration, the word "*taxes*" is used with reference to property, and without any qualifying words except the words "due on it," which simply limit it to the taxes due upon the particular property, and according to the rule above quoted must be held to mean ad valorem taxes; that is, the word is used with reference to the kinds of taxes mentioned in the Constitution, and should be construed with reference to the use of it in other portions of the Constitution. In the same case, the court said: "The power of the Legislature over assessments for local improvements is to be measured by its own will, in the absence of some constitutional restrictions, and we find none such in the Constitution of this State where the power is used for the purposes for which that method of taxation has so long been deemed lawful."

A careful examination of the decisions of our own and the courts of other States will show, that the foregoing remark is fully justified as a correct statement of the result of the adjudications of courts of last resort.

But the Constitution of this State, in the sixteenth article and fiftieth section thereof, has in such plain and unmistakable language defined

and limited the liability of homesteads to forced sale, that no department of the State government can disregard it. From the inception of homestead exemptions in this State, the changes have all been in the direction of larger exemptions and more perfect protection. Every decision of the courts which trenched upon the liberal spirit of the Constitution in that particular has been met at the next assembling of the people in convention by provisions to meet the construction thus given. Whether it is good or bad policy is not a question for the courts. The Constitution is paramount, and must be observed and enforced.

In the case of Galveston v. Heard, 54 Texas, 448, the right to sell the homestead for assessment for street improvement was denied, but the court waived the question as not being necessary to the determination of that case, and said, "we have no design to intimate that the defense, if established, would have been of any avail."

In Lufkin v. City of Galveston, 58 Texas, 545, the same question was presented, and the court there held, that the homestead was subject to sale in satisfaction of this class of demands. The opinion was delivered by Judge West, who said: "The Constitution of the State (article 16, section 50) makes no difference between the homestead and other real property as to its liability to be sold for taxes that may be due on it. Nor does it draw any distinction between general and special taxes to which it may be subject. The plain import of its terms is, that it is not protected from forced sale for taxes that may be due on it." No authority is cited, nor is there any inquiry as to whether or not the assessment is included in the terms of the Constitution. It is assumed that the assessment is a special tax, and upon that assumption the homestead was held to be liable. Mr. Desty, in his work on Taxation, defines special taxation as follows: "Special taxation, as distinguished from taxation for general municipal purposes, is the levy of taxes to meet a special burden, either imposed by the Legislature or authorized by the legal voters of the district to be taxed." 2 Desty on Tax., p. 1186. And we believe that the definition might be enlarged so as to include not only the tax levied by the Legislature or voted by the voters, but also such as by law a municipal corporation may levy. As an instance of special tax authorized by the voters, we mention the tax to support free schools within a city; and as an instance of that character of taxes which the Legislature might authorize without such vote, we would suggest that under article 8, section 9, of the Constitution, the Legislature might empower the city to levy a tax not to exceed 25 cents on the $100 for streets and other public improvements; and for either or both of these the homestead would be liable, if levied as a tax under the constitutional limitations.

The learned judge who wrote the opinion in the case of Lufkin v. Galveston said, as above quoted, that "the plain import of its [the Constitution's] terms is, that it is not protected from taxes that may be due

on it." And again he says: "Nor does it draw any distinction between general and special taxes to which it may be subject." It is not asserted that the assessment in question is a tax, general or special; but we conclude that it must have been treated as a special tax, as it is too clear for argument that it is not a general tax. Is it a special tax? If it be a special tax, then it is taxation, and would fall within the requirement, that "all taxation must be uniform and equal." If a special tax, it must be a tax for *some purpose,* and would come under the limitation as to taxes "for all purposes." And again, if it were a tax, though it be for a special purpose, it would be embraced in the terms of the law authorizing the collector to sell property for unpaid taxes. Our courts have held that such assessments are not included in any of these expressions, and we can not see how it can be held to be a special tax, when it has none of the characteristics of a *tax* in any sense in which it is used in the Constitution.

We feel constrained, upon authority and sound reasoning, to hold that the charge made against the homestead of William and Mary Higgins for the cost of the sidewalk was not a tax, general or special, within the meaning of article 16, section 50, of the Constitution; and that the case of Lufkin v. Galveston is in conflict with the decisions of this court, and, in so far as it holds the homestead liable to forced sale for such assessments, that case is hereby overruled.

There being no lien upon the lot sought to be subjected to sale in the case of The City of Beaumont v. Higgins and Wife, and the amount claimed being for a sum less than $500, the judgment rendered by the court foreclosing a lien upon the lot was void, and the sale of the lot under that judgment conferred no title upon Bordages. These facts showing want of jurisdiction of the subject matter of the suit appeared upon the face of the record, and the nullity of the judgment will be taken notice of by any court, and at any time.

The District Court erred in rendering judgment for the plaintiff below, and the Court of Civil Appeals erred in affirming the judgment (in which, however, both followed Lufkin v. Galveston), for which errors the judgments of both courts are reversed, and judgment will be here rendered that the plaintiff below, I. R. Bordages, take nothing by his suit, and that the defendants, Henry Higgins and Mary Higgins, go hence without day, and that they recover of the said I. R. Bordages all costs in this case in all the courts.

*Reversed and rendered.*

Delivered April 8, 1895.

DENMAN, Associate Justice, did not sit in this case.

Motion for rehearing was filed by *W. L. Douglass* and *J. F. Lanier,* attorneys for defendant in error, and *O'Brien & O'Brien, Willie & Ballinger, Hume & Kleberg, Jones & Garnett,* and *Ewing & Ring,* of counsel for defendant in error.

Arguments supporting motion for rehearing were filed by *Thos. J. Ballinger* (of Willie, Campbell & Ballinger), April 24, 1895; *Hume & Kleberg*, April 29; *Ewing & Ring*, April 29; and *J. F. Lanier*, May 13.

Want of space forbids their insertion, or of even a synopsis.

*Greer & Greer* filed an argument resisting the motion.

### ON MOTION FOR REHEARING.

BROWN, ASSOCIATE JUSTICE.—The grounds upon which this motion is based are in substance as follows:

1. That this court erred in holding that the judgment in the case of The City of Beaumont v. William and Mary Higgins was void for want of jurisdiction of the subject matter.

2. That the court erred in holding that sidewalk and street assessments were not taxes within the meaning of section 50, article 16, of the Constitution.

3. That the decision of this court in this case is in violation of the accepted doctrine of stare decisis.

The argument of counsel presents another question of importance and interest, to the effect, that contracts made during the time that the decision of Lufkin v. The City of Galveston remained in force would be protected under the Constitutions of the United States and of this State, which prohibit the passing of any laws violating the obligations of contract. The question is not involved in this case, and will not be either discussed or decided. Whenever the question arises this court will consider it upon its merits as then presented, but will not express an opinion upon the proposition in advance.

We will not review at length the questions decided in the former opinion, but will briefly say, with regard to the first ground of the motion. that the petition and judgment in the case of City of Beaumont v. William Higgins and Wife, showed upon their face that William and Mary Higgins were husband and wife, and that they occupied the property. The highest evidence of the homestead right is the occupancy of it by a family, and we presume that no court would hold, that such proof as is made by the allegations of the petition in that case was not sufficient to establish the homestead right.

The District Court of Jefferson County had no jurisdiction of the subject matter of that suit, unless there was a lien upon the land sought to be subjected to the payment of the claim. The petition and judgment showed upon their face that a lien could not exist upon the land; therefore, there was no jurisdiction of the subject matter, and there was no necessity for a defense, because the court had no power to hear the case, or to render any judgment therein.

Upon the second ground of the motion, we will only say, that we are firmly convinced that our construction of the Constitution is sustained by authority and sound in principle; and we have not been

cited to any authority which in the least shakes our conclusion upon that question.

The third ground was well considered by this court before the former opinion was written. We recognize the impropriety of unsettling questions which have been well settled by former decisions of this court, and thereby rendering the law uncertain, and we fully recognize the rule that a court should not overturn a well established line of decisions, unless it be for "cogent reasons," and because of the fact that an error committed by such decisions being perpetuated would deprive others of rights secured to them. We do not purpose to enter into a discussion of the doctrine of stare decisis, which is not observed by any court to the extent that is claimed by the defendants in error in this case, as is shown by the great number of overruled and modified cases to be found in our own and the reports of the courts of all other States. We will attempt, however, to show the want of its proper application to the character of case now before the court, by calling attention to the evil consequences that would follow from an adherence to the decision made in the case of Lufkin v. The City of Galveston.

The proposition contended for by defendant in error in this case is fairly stated, thus: The Constitution exempts homesteads from forced sale for the payment of assessments for local improvements. The decision of this court in the case of Lufkin v. City of Galveston construes that Constitution so as to make homesteads subject to forced sale for such claims; in the language of the motion, "that the meaning and intent of the phrase, 'the taxes due thereon,' in section 50 of article 16 of the existing Constitution of Texas, as grafted thereon by this court on February 13, 1883, in the case of Lufkin v. City of Galveston," so changes the Constitution as to subject property, as before stated, to forced sale in a case in which the Constitution as framed forbade its sale. To sustain the former decision deprives all owners of homesteads in the State of Texas of the protection of the Constitution for all time to come, or so long as that Constitution shall remain in force. To overrule the case of Lufkin v. City of Galveston may interfere with, and possibly destroy, the rights and claims of persons who have acquired them with reference to that decision. Shall we uphold the Constitution as it was made by the sovereign power of the State of Texas, or shall we uphold a decision of the Supreme Court, itself a creature of the Constitution?

This question is ably answered by Judge Moore in the case of Willis v. Owens, 43 Texas, 48. That case involved the constitutionality of an "Act to organize and maintain a system of public schools, approved April 24, 1872." The constitutionality of the law had been sustained by four separate and distinct decisions of the Supreme Court of this State. The case involved the power of the Legislature to subject the property of the citizen to taxation under the Constitution then in force. The same question is here presented: has the Legislature the power to

subject the homestead to sale for assessments for local improvements, claimed to be made under the power of taxation? In the case of Willis v. Owens, the doctrine of stare decisis was invoked, and Judge Moore said: "We can not, however, regard the rule of stare decisis as having any just application to questions of the character involved in these cases. This doctrine grows out of the necessity for a uniform and settled rule of property, and definite basis for contracts and business transactions. If a decision is wrong, it is only when it has been so long the rule of action, as that time and its continued application as the rule of right between parties demands the sanction of its error. Because, when a decision has been recognized as the rule of property, and conflicting demands have been adjusted, and contracts have been made with reference to and on faith of it, greater injustice would be done to individuals, and more injury result to society, by a reversal of such decision, though erroneous, than to follow and observe it. But when a decision is not of this character, upon no sound principle do we feel at liberty to perpetuate an error into which either our predecessors or ourselves may have unadvisedly fallen, merely upon the ground of such erroneous decision having been previously rendered.

"The questions to be considered in these cases have no application whatever to the title or transfer of property, or to matters of contract. They involve the construction and interpretation of the organic law, and present for consideration the structure of the government, the limitations upon legislative and executive power, as safeguards against tyranny and oppression. Certainly, it can not be seriously insisted, that questions of this character can be disposed of by the doctrine of stare decisis. The former decisions of the court in such cases are unquestionably entitled to most respectful consideration, and should not be lightly disregarded or overruled. And in case of doubtful interpretation, a long-settled and well-recognized judicial interpretation, or even legislative or executive construction within the sphere of their respective functions, might be sufficient to turn the balanced scale. But in such case, the former decision or previous construction is received and weighed merely as an authority tending to convince the judgment of the correctness of the particular conclusion, and not as a rule to be followed without inquiry into its correctness."

We have carefully considered the decision invoked upon this question, which was made apparently without that thorough investigation which the subject demands, without reason to support it; and notwithstanding the great ability of the judges who composed the court at that time, we are forced to the conclusion, that the decision in Lufkin v. City of Galveston is directly antagonistic to the express provisions of the Constitution of this State. The doctrine of that case is in antagonism to a long line of decisions of our own court upon kindred questions. It is unsupported by any other decisions of this court, and is opposed to a line of decisions in the courts of other States, almost unbroken. To follow it, means to disregard the Constitution, as we understand

its provisions; and in our judgment, would deprive citizens of a constitutional protection provided by a convention representing the sovereign power of the State, which had the right to determine the policy of this State with regard to this question.

This case does not involve any question of contract. The city of Beaumont, under the law, undertook to exercise a power which could not be conferred by the Legislature under the Constitution, and in no phase of the case can it be claimed that the purchaser under the judgment rendered in favor of the City of Beaumont v. Higgins and Wife, upon the claim thus created, is entitled to any of the benefits of the constitutional provisions protecting contracts from interference by subsequent legislation.

Being firmly convinced that our former opinion properly construes article 16, section 50, of the Constitution of this State, and preserves to the citizens of this State the protection which the Constitution guarantees to them, we are constrained to overrule the motion for a rehearing in this case.

*Rehearing refused.*

Delivered June 29, 1895.