CITY OF SAN ANTONIO v. SPEARS et ux.
(No. 6073.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 30, 1918. Supplemental Opinion, Nov. 4, 1918. Rehearing Denied Dec. 4, 1918.)

1. MUNICIPAL CORPORATIONS ☞434(5)—SPECIAL ASSESSMENTS — LIENS ·UPON HOMESTEADS.

Special assessment for paving under Acts 31st Leg. (2d Ex. Sess.) c. 14, § 7, providing that no power is given to fix a lien against any property exempt by law from sale under execution, created no lien upon the homestead premises of a property owner and her husband.

2. MUNICIPAL CORPORATIONS ☞586 — SPECIAL ASSESSMENTS—PERSONAL JUDGMENTS—"OWNER."

Acts 31st Leg. (2d Ex. Sess.) c. 14, providing for the assessment of the cost of improvements against abutting owners, and that the cost shall be a personal liability of the owner, includes, within the term "owner," married women.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Owner.]

3. STATUTES ☞178—CONSTRUCTION—PARTICULAR WORDS — MASCULINE AND FEMININE GENDERS.

In view of Rev. St. art. 5502, subd. 3, providing that the masculine includes the feminine, no inference can be drawn from the use of the masculine gender in Acts 31st Leg. (2d Ex. Sess.) c. 14, § 8, that married women are not included among those personally liable for a special assessment.

4. MUNICIPAL CORPORATIONS ☞488, 489(5)—SPECIAL ASSESSMENTS — HOMESTEAD CLAIMS —ESTOPPEL.

Since the homestead is protected under the Constitution, failure of homestead owners to appear and contest special assessments for public improvements does not estop them from interposing a plea of homestead.

5. MUNICIPAL CORPORATIONS ☞487 — SPECIAL ASSESSMENTS — ERRONEOUS ASSESSMENT—JOINT ASSESSMENT.

A married woman whose property was assessed for a special improvement could not complain that her husband, who had no interest in the property, was joined with her in the assessment, the error being a mere irregularity which, not having been urged at the proper time, will not be permitted to invalidate the certificate.

6. MUNICIPAL CORPORATIONS ☞406(2)—SPECIAL ASSESSMENTS—POWER—DELEGATION BY LEGISLATURE.

Acts 31st Leg. (2d Ex. Sess.) c. 14, providing for the assessment of the cost of public improvements against abutting property, is not invalid as a delegation of legislative power.

Appeal from District Court, Bexar County; J. T. Sluder, Judge. .

Action by the City of San Antonio against Noa Spears and wife. Judgment for defendants, and plaintiff appeals. Affirmed in part and in part reversed and judgment rendered.

R. J. McMillan, of San Antonio, L. M. Dabney, of Dallas, Taliaferro, Cunningham &

Birkhead and Augustus McCloskey, all of San Antonio, and L. H. Flewellen, of Dallas, for appellant.

Lewright & Douglas, of San Antonio, for appellees.

MOURSUND, J. The city of San Antonio sued Noa Spears and his wife, May H. Spears, for the use and benefit of the Texas Bitulithic Company, to collect a certain assignable certificate of special assessment for $228.65, issued by said city on May 10, 1915, to said company, for the pro rata part of the cost of paving a street in said city on which defendants have their residence. The certificate recites that the assessment was levied against the real estate on which defendants resided, and also against May H. and Noa Spears as a personal liability.

The case was tried on an agreed statement of facts, and judgment rendered in favor of defendants.

The findings of fact of the trial court are as follows:

"(1) I find that on December 18, 1913, the city of San Antonio adopted and put into effect what is known as the 'Procedure Ordinance,' providing for the levy and collection of special assessments for street paving purposes against property owners of abutting property, and for fixing a lien therefor against such abutting property. Said ordinance comprehensively provides for the giving of notice to the property owners by publication and through the mail, and every detail for the letting of street paving contracts, and the fixing of the lien and personal liability to secure the payment of the assessment for the cost thereof, all as outlined in articles 1006 et seq. of the Revised Statutes of 1911.

"(2) Said 'Procedure Ordinance' follows the plan of what is known as 'the front-foot rule,' and is based entirely on the Acts of 1909, being title 22, chapter 11, of the Revised Civil Statutes of 1911, the provisions of said act having been adopted by a vote of the people of the city of San Antonio at an election held on June 30, 1913.

"(3) The charter of the city of San Antonio was amended by a vote of the people at an election held on the 24th day of February, 1914, and section No. 90 of the amended charter, giving the city exclusive control and power over the streets of the city, etc., contains this proviso: 'Provided, that nothing in any of these amendments contained shall in any manner affect the powers conferred upon the city of San Antonio by the adoption at an election heretofore held of chapter 11, title 22, of the Revised Statutes of Texas of 1911.' The charter of the city of San Antonio makes no other reference and contains no other provision in regard to the levying of special assessments for street paving purposes.

"(4) I find that the city of San Antonio levied a special assessment, payable in installments, aggregating the sum of $228.65, against defendants, Noa Spears and May H. Spears, for street improvement, and that a certificate therefor was duly issued, under the provisions of the 'Procedure Ordinance' aforesaid, and that every provision of said ordinance, including the publishing and mailing of notice to said defendants of a time and place for hearing thereon, was fully complied with, and that at the time this suit was instituted the first of said installments was due and unpaid, and by reason of said default the whole of said indebtedness was matured and became due and payable, including a reasonable attorney's fee, which is here fixed at $50, and interest, all as alleged in plaintiff's petition.

"(5) I find that a contract was let by the city of San Antonio to the Texas Bitulithic Company, a corporation, for the benefit of which this suit is brought, under the provisions of said 'Procedure Ordinance,' for the street paving aforesaid, and that said contract was fully completed and the work accepted by the city of San Antonio on or about the 10th day of May, 1915.

"(6) I find that May H. Spears (wife of Noa Spears) was married prior to the initiating of any of the steps looking to the levying of said special assessment, and that she owned at all of said times, in her own separate estate, the property described in plaintiff's petition against which a lien is sought, and that said property abuts upon the street which was paved by said Texas Bitulithic Company as aforesaid, and that said property was at all of said times occupied and used by defendants Noa Spears and wife as their residence homestead.

"(7) Neither of the defendants appeared before the city council at the hearing provided for in connection with said street paving assessment, nor did they, or either of them, institute any suit at any time to restrain or set aside any of said proceedings."

The parties embraced in their agreement a statement of the only issues of law to be determined by the court, as follows:

"(1) The premises in controversy having been at all the times herein set forth occupied by said defendants as a place of residence for themselves and their family, is the plaintiff herein entitled to a foreclosure of an assessment lien thereon under the terms of said ordinance of assessment and of the said certificate?

"(2) The said defendant May H. Spears having been at all times herein mentioned a married woman, and the premises herein mentioned being her separate property, is the plaintiff entitled to a personal judgment against the said May H. Spears upon the personal claim of liability attempted to be fixed against her by the terms of said ordinance and certificate?

"(3) Neither of defendants having filed any written contest at the hearing before the city council of the city of San Antonio given to owners of property abutting upon said Woodlawn avenue, hereinabove described, and not having appeared at said hearing or in any way contested said assessment, and said defendants not having filed within 20 days after the said hearing, and after the ordinance of assessment, any suit or action contesting the said assessment, are they, or either of them, now estopped to interpose a plea of homestead herein?

"(4) The said defendants having failed to file any written or other contest or in any wise to appear and contest said assessment at the said hearing, and not having within 20 days thereafter, or within 20 days after said ordinance of assessment, brought any suit or action to contest the same, are they estopped from setting up the coverture of the said May H. Spears as a defense to the personal liability against her?

"(5) The only issue presented with reference to the validity of the city ordinances of San Antonio is whether or not the same are unconstitutional and without authority of law by reason of the same having been based upon the statutory provisions of the act of 1909, put into effect by the people of the city of San Antonio, in contravention of the rule which inhibits the Legislature from delegating its legislative authority."

We will discuss the issues in the order they are presented in the agreement.

[1] The plaintiff acquired no lien upon the premises described in the certificate for the reason that the same constituted the homestead of appellees, and under the express provision of section 7 of the act of May 10, 1909, by virtue of which the improvements

were made, it is provided that no power is given to fix a lien against any property exempt by law from sale under execution.

The decision of the second issue involves the construction of the act of 1909 (Acts 31st Leg. [2d Extra Sess.] c. 14), above mentioned, which appears as chapter 11 of the Revised Statutes of 1911. The caption of the act is as follows:

"An act to authorize incorporated towns, cities and villages in the state of Texas, to construct permanent street improvements and assess part of the cost thereof against the owners of property abutting upon such improvements and their property, and against the owners of railroads or street railroads occupying streets or highways improved and their property, and to provide for the enforcement and collection of such assessments, and to provide for the submission hereof to a vote of the resident property taxpayers who are qualified voters of such towns, cities and villages, and declaring an emergency."

We will not copy the entire act in this opinion, but will copy those sections and parts of sections having the most bearing on the question to be decided:

"Sec. 4. That the cost of making such improvements may be wholly paid by the city, or partly by the city and partly by owners of property abutting thereon: Provided, that in no event shall more than three-fourths of the cost of any improvement, except sidewalks and curbs, be assessed against such property owners or their property; but the whole cost of construction of sidewalks and curbs in front of any property may be assessed against the owner thereof or his property."

"Sec. 6. Subject to the terms hereof the governing body of any city shall have power by ordinance to assess the whole cost of constructing sidewalks or curbs, and not to exceed three-fourths of the cost of any other improvement, against the owners of property abutting on such improvement and against their abutting property benefited thereby, and to provide for the time and terms of payment of such assessments and the rate of interest payable upon deferred payments thereon, which rate of interest shall not exceed 8 per centum per annum, and to fix a lien upon the property and declare such assessments to be a personal liability of the owners of such abutting property, and such governing body shall have power to cause to be issued in the name of the city assignable certificates, declaring the liability of such owners and their property for the payment of such assessments, and to fix the terms and conditions of such certificate. * * *

"Sec. 7. Nothing herein contained shall be construed to empower any city to fix a lien by assessment against any property exempt by law from sale under execution, but the owner of such exempt property shall nevertheless be personally liable for the cost of improvements constructed in front of his property which may be assessed against him. The fact that any improvement is omitted in front of exempt property shall not invalidate the lien of assessments made against other property on the highway improved, not so exempt. The lien created against any property, or the personal liability of the owner thereof, may be enforced by suit in any court having jurisdiction or by sale of the property assessed in the same manner as may be provided by law for the sale of property for ad valorem city taxes. The recital in any deed made pursuant to such sale, that all legal prerequisites to said assessment and sale have been complied with, shall be prima facie evidence of the facts so recited and shall in all courts be accepted without further proof.

"Sec. 8. No assessment of any part of the cost of such improvement shall be made against any property abutting thereon or its owner, until a full and fair hearing shall first have been given to the owners of such property preceded by a reasonable notice thereof given to said owners, their agents, or attorneys. * * * But no assessment shall be made against any owner of abutting property or his property in any event in excess of the actual benefit to such owner in the enhanced value of his property by means of such improvements as ascertained at such hearing."

"Sec. 10. Any property owner against whom or whose property any assessment or reassessment has been made shall have the right within twenty days thereafter to bring suit in any court having jurisdiction to set aside or correct the same or any proceeding with reference thereto, on account of any error or invalidity therein. But thereafter such owner, his heirs, assigns or successors shall be barred from any such action, or any defense of invalidity in such proceedings or assessments or reassessments in any action in which the same may be brought in question."

Emergency clause:

"The fact that many cities have no general funds out of which street improvements can be constructed and no charter powers under which the cost thereof can be collected from owners of abutting property benefited thereby or from public service corporations occupying the streets, and the fact that such improvements are urgently needed, and that the citizens of many cities are anxious to obtain the benefits of this act, create an emergency. * * *"

[2] The language of the act is comprehensive enough to include married women as owners, and as it is designed to enable cities to make much needed improvements inuring to the general welfare of the public, and peculiarly benefiting those whose property abuts on the streets to be improved, it is natural and just that all property owners who derive benefits should share in paying for the improvements, especially as the assessment cannot exceed the benefit derived by the owner. No good reason can be urged why all owners should not be treated alike, provided the Legislature has the power to do so, and it must be conceded that the Constitution does not prohibit the Legislature from authorizing such assessments to be levied against married women and their property. Prior to the passage of the act the Supreme Court had held, in the case of Higgins v. Bordages, 88 Tex. 458, 31 S. W. 52, 803, 53 Am. St. Rep. 770, that such assessments could not be made a lien against homesteads. The Legislature, having that decision in mind, in section 7 expressly excepted exempt property, but provided that the owner should be personally liable for the assessments; thus undertaking to equalize the burden of making the improvements as much as it could under the handicap imposed by the holding that under the Constitution the homestead was protected from liens for such assessments. It was evidently contemplated, however, that if the owner of a homestead was insolvent it might be advisable not to improve the street in front of such premises, for it is provided that "the fact that any improvement is omitted in front of exempt property shall not

invalidate the lien of assessments made against other property on the highway improved not so exempt." These provisions are significant, and greatly strengthen the conclusion that the Legislature, by the use of the word "owners," intended to include married women. The express mention of the exception of homesteads precludes the idea that the Legislature had in mind another exception, namely, property owned by married women. The careful provision that omitting the improvement in front of a homestead should not invalidate the lien made against other property on the highway improved indicates that the Legislature contemplated that improvements would be made in front of all property except homesteads, and lends strength to the proposition that the Legislature intended to grant power to collect for improvements in front of property owned by married women.

It cannot reasonably be contended that the Legislature considered the ownership of property by married women to be of such importance as to require cities to favor property so held above homesteads, and require that the streets and sidewalks in front of property so owned should be improved without exacting any compensation therefor.

[3] The language of the act does not admit of a construction which would exempt married women from personal liability, but gives a lien on their property. It is therefore clear that the Legislature intended to include married women as owners, or else to make them such a highly favored class that it is inconceivable they would not in express terms have excepted them from the provisions of the act. No inference can be drawn from the use of the masculine gender in section 8 that married women are not included, for article 5502, subd. 3, of our statute expressly provides that the masculine includes the feminine and neuter genders, and, besides, if any effect could be given to such use of the masculine gender it would be logical to hold that it excluded all women, whether married or not.

While we appreciate the theory on which the common law and statutory protection of married women against their contracts is based, we must confess that we cannot see why the Legislature would want to exempt married women from special assessments on account of benefits to their property, and at the same time make single women pay such assessments, any more than to make a similar discrimination in the taxes upon their properties.

It appears to us that the act in question shows more clearly than any other statute passed by our Legislature on the subject of street improvements an intention to include all owners, and, if it should be held that married women are excepted from its operation, it will probably follow that all of our other statutes relating to street improvements will receive a similar construction, for all use the words "owner" or "owners" of property, and do not expressly provide that such words are intended to include married women. In this connection it is of interest to note that articles 999, 1000, 1001, 1002, 1003, 984, 855, 846, 847, 856, and 857 are taken from the same act, that of March 15, 1875 (Acts 14th Leg. [2d Sess.] c. 96), and confer various powers upon cities with respect to the "owner" or "owners" of property. The question naturally suggests itself whether, in passing the act in question, the Legislature is held to have meant to exclude married women in each instance in which it used the words "owner" or "owners," or whether, as to condemnation of property and assessments for failure to make improvements in the interest of the public health, it meant to include married women in the term "owners," and as to matters of street and sidewalk improvements, which inure to the benefit of the owners and to the welfare of the general public, they meant by the word "owners" all owners except married women.

Article 1003 is section 130 of the act of 1875 as amended in 1909. Article 984 was amended by the 35th Legislature (chapter 184).

In the act of 1913 (chapter 17, Vernon's Sayles' Statutes), relating to the amendment of charters by cities of more than 5,000 population, the power to levy assessments for street improvements against abutting property, and to make same a personal charge against the owner thereof, is conferred; also to levy assessments for benefits derived from street widening; also for improvement of any river or creek. In the same act power is given to provide for a sanitary sewer system, and to require property owners to make connections therewith, and to provide for fixing a lien against any property owner's premises who fails or refuses to make sanitary sewer connections, and to charge the cost against the said owner, and make it a personal liability. Are exceptions in favor of married women to be read into this act in every instance where it mentions owners, or only when it deals with assessments for street improvements? Is a married woman to be exempted from liability for the expense of connecting her premises with the sewer system, or is she intended to be included, in so far as the city is authorized to assess her and her property, for expense incurred in connecting her premises with the sewer system, but not intended to be included in so far as assessments for street improvements, street widening, and improvement of rivers and creeks are authorized?

Appellees rely upon the case of Eubank v. City of Fort Worth, 173 S. W. 1003. We do not concede that the construction of the statute under consideration must be governed by the construction placed upon the Ft. Worth charter, for in the statute under con-

sideration the Legislature named an exception in such language as to indicate that no other exception was intended; but at the same time we believe the court erred in that case in holding that "there should be an exception engrafted upon the charter, so as to permit the operation of the principles of the common law excluding a personal liability on the part of a married woman, in the absence of contract." As no power exists in a municipal corporation by virtue of the common law to levy assessments for special benefits accruing to property by reason of public improvements, and it took a statute to confer such power on the city of Ft. Worth, it appears that under the common law not only married women, but unmarried women and men, could not be made liable for such assessments. The Legislature in enacting the charter undertook to change the common law, and to establish, we may infer, a just system for charging individuals who benefit by public improvements with an assessment not in excess of the benefits derived. The act purports on its face to confer such power with respect to the owners of property abutting on the highway to be improved. At common law the unmarried women and the men could contract for such improvements, and under the statute married women were authorized to contract for improvements upon their separate property. That paving in front of a lot, where the ownership of the fee extends to the middle of the street, constitutes an improvement on the lot, such as would authorize a valid mechanic's lien upon even a homestead, is held in the case of Lewis v. Roach-Manigan Co., 184 S. W. 680.

The Legislature, in conferring the power to levy assessments, must have had in mind the proposition that persons owning property frequently refused to contract for improvements and thus rendered necessary the granting of the power to levy assessments. If any class of persons was regarded as such favorites of the law that they should not be required to respond to the public demand for improvements unless they were willing to do so by contract, it appears reasonable that the Legislature would have expressly so stated. There is no inconsistency between legislation concerning the power of married women to enter into contracts and the power of municipal governments to compel them to bear their just share of the expense of public improvements which benefit their property. It has been the policy of the law to protect the corpus of the wife's separate property from the encroachments of the husband, but not from her just share of the burdens of government. When the common law is swept aside, which protected all persons from such assessments, and a statute is passed which subjects the owners of property in a certain city to such assessments, it is erroneous, we think, to hold that the Legislature meant every owner except married women, and base such holding upon the theory that no intention should be imputed to the Legislature to affect such rights as married women had at common law. The fact that at common law a married woman could make no contract binding herself personally, we submit, should not be presumed to have had any weight with a Legislature which was cognizant of the fact that in this state a married woman under the statute could make a contract binding herself personally to pay the sum for the paving which can be assessed against her if she is held to be included in the term "owner."

As stated by Judge Speer (Speer's Law of Marital Rights in Texas, § 238) the recognition of the wife's separate identity, as an individual capable of contracting, suing, and being sued, has necessitated a further recognition of her power to bind herself by her acts and conduct in numerous instances, all of which are discussed by him in chapter 14 of his valuable text-book. In view of the status of married women in Texas, as to property rights and contractual rights, it would be strange if the Legislature considered it expedient to exempt them from paving assessments. To do so would not only be unjust, but would encourage the transfer of property to married women by those seeking to escape their just burdens, and would, if held not to invalidate the law, create a system whereby the burdens of public improvements are unequally distributed. In this connection we call attention to what Judge Speer says concerning the Eubanks Case in section 141 of his work above cited.

We conclude that the act of 1909 empowered cities which adopted it to levy assessments as a personal liability against married women who owned property abutting on streets paved under the provisions of said act.

[4] The defendants were not estopped from interposing a plea of homestead. The act confers no power to fix a lien on a homestead, whether by estoppel or in any other way, and, even if it had not stated that no power existed to levy an assessment against a homestead, the homestead would have been protected under the Constitution, and such protection could not be affected by any failure of the owners to appear and contest the proceedings.

[5] As we have held that the power existed to assess Mrs. Spears personally for improvements made in front of the homestead owned by her, it is profitless to answer the question submitted in the fourth issue, namely, whether defendants are estopped from setting up the coverture of Mrs. Spears as a defense to the personal liability against her. In this connection, however, it may be proper to discuss the issue whether the assessment is invalid, as held by the trial court, because it was made jointly against Mr. and Mrs. Spears, and it appears that Mr. Spears owns no interest in the property. The issue

thus decided appears not to have been contemplated in making the agreement as to the issues to be decided, but, conceding that it is included, we conclude the court erred in deciding the same. If each of the parties had owned part of the property, the assessment would have been justly subject to criticism; but, as Mrs. Spears is liable for the full amount, we fail to see any reason for permitting her to take advantage of the fact that another person is made jointly liable with her for such amount. At the utmost, the supposed defect is nothing more than an irregularity, which, not having been urged at the proper time, ought not to be permitted to invalidate the assessment certificate.

[6] The fifth issue must be answered in the negative. The ordinance and statute are valid. Riley v. Town of Trenton, 184 S. W. 345, and authorities therein cited.

The foregoing disposes of the issues proper to be considered under the agreement. The first assignment of error is sustained and the others are overruled. The cross-assignments of error are overruled.

The judgment is affirmed in so far as it provides that plaintiff take nothing by its suit as against Noa Spears, and in so far as it denies plaintiff any foreclosure of a lien; but is reversed in so far as it relates to Mrs. May H. Spears, and judgment rendered in favor of plaintiff against Mrs. May H. Spears for the sum of $275.15, being the amount of said certificate, with interest thereon to November 26, 1917, date of judgment below, and that said judgment bear interest from November 26, 1917, at the rate of 6 per cent. per annum.

#### Supplemental Opinion.

The opinion heretofore rendered in this cause, in stating the judgment rendered by this court, omitted the item of $50 attorney's fee, agreed to as reasonable, and said opinion is amended so as to show that the judgment will be for $325.15, the amount of the certificate, interest thereon at 8 per cent. to the date of the judgment of the trial court, and attorney's fee, $50. Said judgment for $325.15 will bear interest from November 26, 1917, at the rate of 6 per cent. per annum.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes